Clifford S Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone: 503.624.6800
Facsimile: 503.624.6888

Attorneys for Plaintiff DePaul Industries, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DEPAUL INDUSTRIES, INC., an Oregon corporation, | Case No. 3:21-CV-01792-HL |
| Plaintiff, | DEPAUL INDUSTRIES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIM 1, COUNT 2 |
| vs. | |
| CITY OF PORTLAND, a municipal corporation, | ORAL ARGUMENT REQUESTED |
| Defendants. | Date: August 15, 2022 |
| | Time: 2:00 p.m. |
| | Location: Hatfield Courthouse, TBD |

### LR 7-1 CERTIFICATION

The parties made a good-faith effort to resolve this motion through in-person and telephonic conferences but were unable to do so.

### MOTION

Pursuant to Federal Rule of Civil Procedure 56, plaintiff DePaul Industries, Inc. ("DePaul") moves for summary judgment in its favor on Count 2 of its First Claim for Relief, seeking a declaratory judgment that defendant City of Portland may not enforce its Labor Peace

Requirement against DePaul. That is because (1) DePaul participates in the statewide Oregon Forward Program, *codified at* ORS 279.835 to 279.855 and OAR 125-055-0005 to 125-455-0045, and (2) the Oregon Forward Program preempts the City of Portland's Labor Peace Requirement. This motion is supported by the following memorandum, the concurrently-filed Concise Statement of Material Facts, the Declaration of Katy Daughn, the Court's file, and any further evidence or argument DePaul might present on reply or at the hearing on this motion.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

<strong>TABLE OF CONTENTS</strong>

<strong>Page</strong>

I.      INTRODUCTION ................................................................................... 1

II.     STATEMENT OF MATERIAL FACTS ................................................ 2

     A.     The legislature enacted the Oregon Forward Program ("OFP") to create a continuous market for goods and services produced and provided by Oregonians experiencing disabilities that otherwise would pose barriers to employment ....................................................................................... 2

     B.     DePaul Industries, Inc. ("DePaul") is an Oregon Forward Contractor ("OFC") ................................................................................................ 3

     C.     The City adopts a Labor Peace Requirement, which requires City contractors performing certain types of services to reach labor peace agreements with relevant unions. Those agreements are a precondition for contracting with the City ....................................................................... 3

     D.     Because of the Labor Peace Requirement, the City refuses to contract with DePaul absent a labor peace agreement ................................................. 6

III.    SUMMARY JUDGMENT STANDARD ............................................... 7

IV.    ARGUMENT ........................................................................................ 8

     A.     When it procures unarmed security services, the City is required to do so through an OFC, such as DePaul, so long as that OFC is available to perform the required services ..................................................................... 8

     B.     The City's Labor Peace Requirement is a binding City policy. ........................... 8

     C.     The OFP preempts the City's Labor Peace Requirement as applied to DePaul because DePaul is an OFC. .................................................... 9

         1.     Oregon's state preemption standard and DePaul's burden in demonstrating preemption. ...................................................... 9

         2.     Express Preemption – the text, context, and legislative history of the OFP demonstrate that the legislature intended the OFP to be the exclusive body of law governing OFCs. ........................... 10

             a.     The OFP text in context shows that the legislature unambiguously intended to create an exclusive statutory and regulatory scheme. .............................................. 11

                 (1)     The Oregon legislature delegated exclusive authority to DAS to maintain and administer the OFP, including the regulation of OFP contractors and the requirements that OFP contractors must satisfy. ........................................................... 11

-i-

(2)      The Labor Peace Requirement does not fall within
the City's limited authority under the OFP to
regulate labor standards. ................................................. 16

b.      Legislative history confirms the exclusive nature of the
state scheme. .............................................................. 19

3.      Implied Preemption - the Labor Peace Requirement cannot operate
concurrently with the OFP. .................................................... 20

V.      CONCLUSION............................................................................. 22

## MEMORANDUM

## I.    INTRODUCTION

In March 2020, the City of Portland (the "City") enacted a requirement that any contractor wishing to provide janitorial, unarmed security, or industrial laundry services to the City would be eligible for City contracts only if the contractor either was unionized or entered into a labor peace agreement with a union. Joint Concise Statement of Material Facts ("CSMF") No. 6 & Ex. 1; Answer ¶ 14. The City placed no restrictions on what the unions could require pursuant to such agreements—in essence, delegating to the unions unlimited power to decide the terms of contracting with the City. This was consistent with the City's objective to give "in roads" to the unions, as the following admission in a public record, which the author[1] did not want to be public, demonstrates:

> Employer and city agrees they will not strike during duration of contract unless working conditions significantly change. Allows unions to build in roads into non-unionized shops with an assurance that employers won't stand in the way of unionization efforts (Don't include in public message). Unions are neutral arbitrator to help non-organized workforce create agreements with their employer. Our office has been deeply engaged in getting this passed. Message from the city is to focus on promoting this as helpful to maintaining critical services.

CSMF No. 7 & Ex. 2 (highlighting added).

The City may not lawfully apply the Labor Peace Requirement to contractors, such as DePaul Industries, Inc. ("DePaul"), that participate in the Oregon Forward Program ("OFP"). That is because the OFP, a state law, expressly or impliedly preempts application of the Labor Peace Requirement to OFP contractors. The Labor Peace Requirement is expressly preempted because, by delegating to the Oregon Department of Administrative Services ("DAS") the exclusive authority to implement and administer the OFP, the legislature intended the state OFP scheme to be exclusive. The Labor Peace Requirement is impliedly preempted because it conflicts both with DAS' exclusive authority and specific DAS rules and, therefore, cannot operate concurrently with the state scheme.

---

[1] The author was Derek Young, Policy Director to Commissioner Hardesty.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Accordingly, the Court should grant the motion, hold that the Labor Peace Requirement may not be enforced against DePaul because it is an Oregon Forward Contractor, and enter a declaratory judgment to that effect.

## II.    STATEMENT OF MATERIAL FACTS

### A.    The legislature enacted the Oregon Forward Program ("OFP") to create a continuous market for goods and services produced and provided by Oregonians experiencing disabilities that otherwise would pose barriers to employment.

First enacted in 1977, the OFP statutory scheme is housed in Chapter 279 of the Oregon Revised Statutes. There, the Oregon legislature codified the express purpose of the OFP:

> "to further the policy of this state to encourage and assist individuals with disabilities to achieve maximum personal independence within their communities through productive gainful employment by assuring an expanded and constant market for products and services produced by qualified nonprofit agencies for individuals with disabilities, thereby enhancing their dignity and capacity for self-support."

ORS 279.840. To that end, Oregon law requires that when a public agency decides to procure goods or services (rather than providing them through the public agency's own personnel), that agency must do so only from OFP contractors when those products or services appear on a procurement list established and maintained by the Oregon Department of Administrative Services ("DAS"):

> "a public agency that intends to procure a product or service on the procurement list that the Oregon Department of Administrative Services established under ORS 279.845 shall, in accordance with the department's rules, procure the product or service at the price the department establishes from a qualified nonprofit agency for individuals with disabilities, provided that the product or service is of the appropriate specifications and is available within the period the public agency requires."

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

ORS 279.850(1)(a). The procurement list is available at https://ofp.dasapp.oregon.gov/Search.

As described in detail below in Section IV, the legislature has tasked DAS with promulgating regulations, setting prices for labor and overhead, and administering the OFP, and the legislature has prohibited DAS from delegating these functions.

**B.      DePaul Industries, Inc. ("DePaul") is an Oregon Forward Contractor ("OFC").**

DePaul is an Oregon public benefit corporation headquartered in Portland. CSMF No. 1. It contracts with public and private entities to provide employment opportunities to persons experiencing disabilities that otherwise would be barriers to employment. DePaul is an Oregon Forward Contractor ("OFC"). CSMF No. 2. DePaul was founded in 1971 and is now part of the DPI Group, the parent company of DePaul and several other entities. CSMF No. 3. The entities now comprising the DPI Group have provided services to the City of Portland, through the OFP and its predecessor laws, for the past 18 years. *Id.* DAS has certified DePaul to provide unarmed security services in Multnomah County, Oregon. CSMF No. 4.

**C.      The City adopts a Labor Peace Requirement, which requires City contractors performing certain types of services to reach labor peace agreements with relevant unions. Those agreements are a precondition for contracting with the City.**

In 2003, the Portland City Council (the "City Council") adopted a local "Sustainable Procurement Policy" as ADM-1.09 (the "Policy"). Answer, ¶ 13. On March 25, 2020, the Portland City Council passed Resolution No. 37483. CSMF No. 5. Among other things, that resolution amended the Policy to include a "Labor Peace" requirement for all "janitorial, security, and industrial laundry" service contracts (the "Labor Peace Requirement"). CSMF Nos. 5, 6 & Ex. 1; Answer, ¶ 14. Attachment 4 to ADM-1.09 specifically addresses the Labor Peace Requirement, which provides:

> "For janitorial, security, and industrial laundry service contracts, a
> contractor shall provide written documentation of "labor peace"
> with a labor organization that represents employees providing

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

similar services in the states of Oregon or Washington and that represents or seeks to represent any group of the contractor's or subcontractor's employees who are or will be involved in providing such services.

"Labor peace shall be defined as a written provision in an agreement or contract whereby a labor organization (as defined by 29 U.S.C. §152(5)), for itself and its members, agrees to refrain from engaging in any picketing, work stoppages, or any other economic interference with the contractor's or subcontractor's performance of services. The labor peace provision must be signed or certified by an authorized representative of the labor organization not more than one year prior to the contractor providing such documentation and must be effective for the duration of the service contract. This labor peace requirement expires at the termination of the contract between the City and the contractor.

"Nothing in this section requires a contractor or subcontractor to recognize a particular labor organization or to enter into a collective bargaining agreement establishing the substantive terms and conditions of employment. Nor is this section intended to enact or express any generally applicable policy regarding labor/management relations, or to regulate those relations in any way, or to provide a preference for any outcome in the determination of employee preference regarding union representation.

"Any failure to comply with this requirement and any service disruption as a result of a labor dispute will subject a contractor to liquidated damages and possible termination of the service contract.

"If the City receives responses to a Request for Proposals and none of the responses provide written documentation of "labor peace", the City's may proceed with an award only if the selected proposer can certify that it: 1) Does not have an exclusive bargaining representative representing its employees; 2) Gave written notice to any and all labor organization/s that represent employees providing similar services in the states of Oregon or Washington or that represent any group of the contractor's or subcontractor's employees who are or will be involved in providing such services of its desire to jointly develop "labor peace," and, the applicable labor organization/s failed to respond within three (3) weeks or the applicable labor organization/s represent that they are not seeking to become the exclusive representative of the contractor's

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

employees; and 3) Certifies that it has no reason to believe a labor dispute will occur for the term of the contract.

"A party asserting the existence of any written notice required by this section, including a labor organization's assertion that it did respond to the employer's notice, must produce physical evidence that the notice was in fact received by the other party."

CSMF Ex. 1 at 25.

Despite its stated policy of neutrality, the City intended the Labor Peace Requirement to provide "in roads" to unions representing janitorial, security, and industrial laundry, such as non-party SEIU Local 49. An architect of the Labor Peace Requirement, Derek Bradley—Policy Director for Commissioner Jo Ann Hardesty—described the purpose of the Labor Peace Requirement, while also indicating that its true purpose should not be disclosed:

**Here are the notes from Derek's debrief**

Makes it so that when the city contracts out janitorial, laundry, or security , the company must meet 1 of 2 factors
1. Workforce must be unionized
2. Workforce must sign a labor peace agreement with their employer that working conditions and business practices are fair, safe, non-exploitive, fair work week, etc.

Employer and city agrees they will not strike during duration of contract unless working conditions significantly change. Allows unions to build in roads into non-unionized shops with an assurance that employers won't stand in the way of unionization efforts (Don't include in public message). Unions are neutral arbitrator to help non-organized workforce create agreements with their employer. Our office has been deeply engaged in getting this passed. Message from the city is to focus on promoting this as helpful to maintaining critical services.

CSMF No. 7 & Ex. 2 at 1-2.[2]

The Labor Peace Requirement resulted from several meetings between City personnel (including Derek Bradley) and non-party SEIU Local 49, which represents workers in the janitorial, unarmed security, and industrial laundry fields. Public records do not indicate that any other union was invited to participate in creating the Labor Peace Requirement, and such records do not indicate that any contractors were invited do discuss that policy.

Furthermore, public records indicate that the creators of the Labor Peace Policy

---

[2] Mr. Bradley responded to the email containing this summary, saying "Looks good to me!" CSMF Ex. 2 at 1.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

specifically intended that policy to apply to Oregon Forward Contractors. For example, in the following public record, Mr. Bradley urged the City's Chief Procurement Officer to ensure that the City Council enacted the Labor Peace Requirement in time for it to apply to the contract of Relay Resources—another Oregon Forward Contractor:

```
-----Original Message-----
From: Bradley, Derek <Derek.Bradley@portlandoregon.gov>
Sent: Saturday, October 26, 2019 12:10 PM
To: Spitler, Lester <Lester.Spitler@portlandoregon.gov>
Cc: Hagins, Felisa <felisah@seiu49.org>
Subject: Relay Janitorial Contract Concerns

Hey Lester,

I'm having a productive Saturday conversation with Felisa and she wanted me to
highlight that she believes the Relay Janitorial Contract is coming up for an
RFP in January and we want to make sure Labor Peace comes before council in time
to capture that contract. Thanks for any insight you can provide on this.

Derek
```

CSMF Ex. 3 at 1.

> **D.** **Because of the Labor Peace Requirement, the City refuses to contract with DePaul absent a labor peace agreement.**

In November 2021, DePaul and the City began to finalize a Work Order Contract, pursuant to which DePaul would perform unarmed security services in certain Portland parks. The effective date of the contract was to be December 1, 2021. As of that date, the parties had agreed on all terms of the Work Order Contract and it was ready to be signed, but DePaul had not obtained a labor peace agreement. Declaration of Katy Daughn ("Daughn Decl."), ¶ 2.

The reason DePaul had not obtained a labor peace agreement was that its sister company, Northwest Success, had an extremely negative experience with its labor peace agreement (which it ultimately rescinded). Daughn Decl., ¶ 3. Indeed, because it was completely unconstrained in what it could demand, SEIU Local 49 presented to Northwest Success a lopsided, overreaching and unconscionable contract.

For example, the SEIU Local 49's proposed labor peace agreement sought to cover its entire jurisdiction—Columbia, Clackamas, Multnomah and Washington Counties in Oregon, and

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Clark County in Washington—not just work performed for the City. Daughn Ex. 5 at 3 § 2a. The proposed labor peace agreement mandated a "recognition procedure" whereby Northwest Success would have to recognize the union by card check,[3] to have the SEIU Local 49 become the representative of the employees without certification by the National Labor Relations Board and contained a confidentiality provision. *Id.* at 4-5 § 4; 6 § 7.

SEIU Local 49 refused Northwest Success' attempt to reach a more typical, actually enforceable labor peace agreement simply providing that, in exchange for Northwest Success' remaining neutral in the course of any unionizing campaign, SEIU Local 49 would agree not to engage in work stoppages or other labor actions. Daughn Decl., ¶ 5 & Ex. 6.

On December 7, 2021, the City notified DePaul that the City would not award the Work Order Contract to DePaul because it had not obtained a labor peace agreement. CSMF No. 12; Answer ¶ 21. This lawsuit ensued.

## III.    SUMMARY JUDGMENT STANDARD

The Court may grant a motion for partial summary judgment as to any claim or defense, or part of any claim or defense. Fed. R. Civ. P. 56(a). The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

Pursuant to the parties' agreement and the Court's request, the parties agree that all facts material to this Motion are contained in the CSMF, and that there are no genuine factual disputes precluding adjudication of this Motion. *See* CSMF at 1. Thus, the only issue remaining for the Court's adjudication is whether DePaul is entitled to judgment as a matter of law.

/ / /

/ / /

---

[3] Pursuant to a card check, a union may become the exclusive bargaining representative of unorganized employees, and can establish majority status, by collecting cards signed by a majority of employees authorizing the union to represent them. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969). The National Labor Relations Act does not require an employer to recognize a union purporting to represent employees pursuant to a card check.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

IV.     ARGUMENT

**A.     When it procures unarmed security services, the City is required to do so through an OFC, such as DePaul, so long as that OFC is available to perform the required services.**

As discussed above, when public agencies procure certain categories of goods or services, they must do so only from OFP contractors when those products or services appear on a procurement list established and maintained by DAS. ORS 279.850(1)(a).

The City is a "public agency" for purposes of the OFP. CSMF No. 14; *See* ORS 279.835(5) (defining "public agency" as "any agency of the State of Oregon or any political subdivision thereof authorized by law to enter into public contracts and any public body created by intergovernmental agreement")

Unarmed security services is a type of service that appears on DAS' OFP procurement list as available in Multnomah County, and DePaul is an OFC certified by DAS to provide that service in Multnomah County. CSMF No. 2 & 4. In fact, DePaul is the only OFC certified to provide unarmed security services in Multnomah County. CSMF No. 15 & Ex. 4.

**B.     The City's Labor Peace Requirement is a binding City policy.**

ADM-1.09 is a "Binding City Policy." Answer, ¶ 13. The City Code, which established and governs the PPD, defines "Binding City Policy" as:

> "statements of the City Council, expressed in a resolution or ordinance, that are directed to future decision-making or procedure and have binding effect or serve as mandatory approval criteria. Such resolutions or ordinances must state in their text that the policy being adopted is a "Binding City Policy." Examples include policies establishing requirements for City employees or other matters regulating the City's budget and internal management."

City Code 1.07.020. It's part of the Portland Policy Documents ("PPD"), which "began as a joint initiative of the Mayor's Office and Auditor's Office to capture all City policies and

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

administrative rules in one central location." *About Portland Policies,*

https://www.portlandoregon.gov/citycode/26812 (last accessed Mar. 31, 2022).

  **C.**  **The OFP preempts the City's Labor Peace Requirement as applied to DePaul because DePaul is an OFC.**

   **1.**  **Oregon's state preemption standard and DePaul's burden in demonstrating preemption.**

  Federal courts apply state law to determine issues of state preemption. *See First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1279 (9th Cir. 2017) ("Whether a California state law preempts a local law is governed by Article XI, section 7 of the California Constitution[.]"); *Syngenta Seeds, Inc. v. Cty. Of Kauai*, 842 F.3d 669, 674-75 (9th Cir. 2016) (applying Hawai'i law regarding state preemption and holding county ordinance regulating pesticides preempted by state law).

  Because the City is a home-rule jurisdiction, *Owen v. City of Portland*, 368 Or. 661, 666-67 (2021), it may in general "decide upon the organization of [its] government and the scope of its powers under its charter without having to obtain statutory authorization from the legislature." *Nw. Nat. Gas Co. v. City of Gresham*, 359 Or. 309, 336 (2016). However, it may not do so if "state or federal law prohibits the city from doing so." *US W Communs., Inc. v. City of Eugene*, 336 Or. 181, 186 (2003); *see* Answer at 8 ¶ 57 ("Defendant is a home-rule city and entitled to adopt rules and policies not specifically preempted by the Oregon Legislature."). In that way, state and federal preemption limit the City's authority.[4]

  State law may preempt local legislation either expressly or by implication. *See City of Portland v. Bartlett*, 304 Or. App. 580, 593 (2020) (using those terms). A state law expressly

---

[4] Conversely, a state law infringes on a city's home rule authority if it is "addressed to a concern of the state with the structure and procedures of local agencies." *City of Portland v. Bartlett*, 304 Or. App. 580, 595 (2020). However, a state statute does not infringe on that home rule authority so long as "it is a general law addressed primarily to substantive social, economic, or other regulatory objectives of the state." The OFP is addressed primarily to such objectives of the state. That is, the OFP does not affect the structure or procedures of the City government; rather, it's a general law to "further the policy of this state to encourage and assist individuals with disabilities to achieve maximum personal independence . . . ." ORS 279.840.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

preempts a local law if "the legislature meant its law to be exclusive," and a state law impliedly preempts a local law where it and the state law "cannot operate concurrently." *Owen*, 368 Or. at 667.

As the party claiming state preemption, DePaul has "the heavy burden of showing that state law preempts the city's ordinance," meaning DePaul must show a "particularly clear" intent to preempt local ordinances. *Owen*, 368 Or. at 667-68. As demonstrated below, DePaul carries its burden here. The Labor Peace Requirement is both expressly and impliedly preempted by the OFP, though it need only be preempted in one of those ways for DePaul to prevail.

> **2.      Express Preemption – the text, context, and legislative history of the OFP demonstrate that the legislature intended the OFP to be the exclusive body of law governing OFCs.**

The State-level OFP preempts the Labor Peace Agreement, as applied to DePaul, because it is apparent that the legislature intended the state scheme to be exclusive. *See La Grande/Astoria v. PERB*, 281 Or. 137, 148 (1978), *on reh'g*, 284 Or. 173 (1978) (a local law is incompatible with legislative policy if the "legislature meant its law to be exclusive").

Courts evaluating potential preemption "begin with the assumption that the legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent." *Rogue Valley Sewer Services v. City of Phoenix*, 357 Or. 437, 453 (2015) (internal quotations omitted). A party urging preemption overcomes that presumption by showing that the legislature unambiguously expressed "an intention to preclude local governments from regulating in the same area governed by an applicable statute * * *." *Id.* (internal quotations omitted). "It is not necessary to use the word 'preempt' to manifest an intention to preclude local regulation." *AT & T Commc'ns of the Pac. Nw., Inc. v. City of Eugene*, 177 Or App 379, 395 (2001), *rev den*, 334 Or 491 (2002).

To determine express preemption, this Court "must follow the state's rules of statutory interpretation." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) (internal

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

quotations and citation omitted). Oregon courts consider text, context, legislative history, and if intent remains unclear, maxims of statutory construction. *Id.* at 998; *see, e.g., Owen*, 368 Or. at 668-83 (determining express preemption by considering statutory text in context and legislative history). Here, the Court should apply Oregon's rules of statutory interpretation and hold that the Oregon legislature unambiguously intended the OFP to be exclusive, and thus precludes application of the Labor Peace Requirement to DePaul.

> a. **The OFP text in context shows that the legislature unambiguously intended to create an exclusive statutory and regulatory scheme.**

The OFP statutory and regulatory scheme unambiguously communicates the Oregon legislature's intent that the state scheme be exclusive. The legislature delegated to DAS the <u>exclusive</u> authority to maintain and administer the OFP. Moreover, the legislature carved out a few limited exceptions to DAS' exclusive authority. The Court should interpret these legislative choices as an unambiguous expression that the OFP preempts local laws creating preconditions to OFP contracting, such as the Labor Peace Requirement.

> (1) **The Oregon legislature delegated exclusive authority to DAS to maintain and administer the OFP, including the regulation of OFP contractors and the requirements that OFP contractors must satisfy.**

The OFP statutory and regulatory scheme unambiguously demonstrates the Oregon legislature's intent that the state scheme be exclusive. To begin, ORS 279.845 delegated OFP duties <u>exclusively</u> to DAS, prohibiting DAS from delegating "any duty imposed under this section to any person or public agency outside of the department." ORS 279.845(3). By doing so, the legislature unambiguously prohibited public agencies from altering the OFP.

Section 1 of ORS 279.845 provides that it is DAS' duty to:

> "(a) Determine the price of all products manufactured and services offered for sale to the various public agencies by any qualified nonprofit agency for individuals with disabilities. The price shall

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

recover the cost of raw materials, labor, overhead, delivery costs
and a margin held in reserve for inventory and equipment
replacement;
(b) To revise such prices from time to time in accordance with
changing cost factors;
(c) To make such rules regarding specifications, time of delivery
and other relevant matters of procedure as shall be necessary to
carry out the purposes of ORS 279.835 to 279.855, 279A.025 (4)
and 279C.335; and
(d) To promote the requirements under ORS 279.835 to 279.855."

While subsections (a) and (b) specifically concern pricing, DAS' duties under subsections (c)
and (d) are extremely broad. Moreover, section 2 of that statute charges DAS with establishing
and maintaining a list of OFP contractors, and the products and services they provide, that DAS
deems suitable for procurement by public agencies. ORS 279.845(2).

By establishing a comprehensive statutory scheme, empowering DAS to maintain and
implement that scheme, and prohibiting DAS from delegating any of its duties under that scheme
per ORS 279.845(3), the legislature unambiguously created an exclusive state scheme, which
prohibits public agencies from altering the OFP. *See Qwest Corp. v. City of Portland*, 275 Or.
App. 874, 883 (2015) ("[T]he state might pass a law or laws expressly precluding all municipal
regulation in an area, such that the state 'occup[ies] the field' in that area.") (quoting *Rogue
Valley Sewer Services v. City of Phoenix*, 357 Or. 437, 454 (2015)); *deParrie v. State*, 133 Or.
App. 613, 619 (1995) (legislature establishes state policy to regulate a subject where it
"regulate[s] particular persons or subjects" or "prohibits *any* regulation of particular persons or
matters, or defines the extent to which they may be regulated, as if the legislature itself regulates
the persons or matters in a particular manner.") (emphasis in original); *see also Atay v. Cty. of
Maui*, 842 F.3d 688, 709 (9th Cir. 2016) ("[T]he Hawaii Supreme Court found a county law
regulating the height of utility poles was preempted by state law that expressly authorized a state
agency to supervise and regulate public utilities, even though the statute did not address the
specific subject of pole heights.") (internal quotations omitted) (citing *Citizens Utilities Co.,
Kauai Elec. Div. v. Cty. of Kauai*, 72 Haw. 285 (1991)).

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

The Oregon Supreme Court's opinion in *Brown v. Spokane, P. & S. Ry. Co.*, 248 Or. 110 (1967), well-illustrates why preemption applies here. There, the plaintiff sued a railroad company for negligence after a train collided with her car at a Portland intersection. *Id.* at 112. The trial court struck the plaintiff's allegations that the railroad company was negligent in failing to comply with a city ordinance that required railroad companies to install, maintain, and operate warning signals at intersections within the City. *Id.* at 123-24. The Oregon Supreme Court explained that "the trial court struck these allegations on the basis that the state had preempted the field in determining the necessity for the installation of mechanical devices to warn travelers on public roads of the approach of trains at grade level intersections." *Id.* That is, a state statute "granted to the Public Utility Commissioner authority, if the crossing is found dangerous, to direct the railroad to install and maintain proper warning signals[.]" *Id.* The plaintiff argued that the "statute did not vest <u>exclusive</u> authority in the state to find that a grade crossing is hazardous and direct the remedy to warn travelers . . . ." *Id.* at 124-25 (emphasis added). The Oregon Supreme Court disagreed, explaining:

> "[ORS 763.170] specifically provided that the Public Utilities Commissioner alone must determine what grade crossings in the state are dangerous and the type of warning device to be used to warn the traveler. If such determinations are left exclusively to the state, there is no room left in which the cities may act on this matter."

*Id.* at 125.

The same is true here. The Oregon legislature delegated OFP duties exclusively to DAS, expressly prohibiting any further delegation to Public Agencies or anyone else. Relevant here, ORS 279.845(1)(c) and ORS 279.845(3) combine to expressly prohibit public agencies from adding to, or modifying, the state's OFP statutory and regulatory scheme. Subsection 3 prohibits DAS from delegating any of its statutory duties and subsection (1)(c) provides that it's DAS' duty "[t]o make such rules regarding <u>specifications, time of delivery and other relevant matters of procedure as shall be necessary</u> to carry out the purposes of ORS 279.835 to 279.855, 279A.025 (4) and 279C.335." (emphasis added). In other words, DAS <u>alone</u> must engage in

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

rulemaking to regulate the OFP, which expressly prohibits cities from creating local rules that modify or add to the exclusive state scheme.

This is precisely the situation in *Brown*; the Court should hold that the legislature intended to preempt local laws such as the Labor Peace Requirement. *See also Syngenta Seeds, Inc. v. Cty. of Kauai*, 842 F.3d 669, 679 (9th Cir. 2016) ("The Hawaii legislature's goal of establishing a uniform system of pesticide control and its delegation, in furtherance of this goal, of rulemaking and licensing authority to the Department of Agriculture clearly evince an intent to preempt local regulation.").

An Oregon Court of Appeals case, *AT & T Commc'ns of the Pac. Nw., Inc. v. City of Eugene*, 177 Or. App. 379 (2001), *rev den*, 334 Or. 491 (2002), is a useful counterfactual that illustrates why the delegation of exclusive authority to DAS evidences express preemption. There, telecommunications companies argued that state law preempted local registration charges and licensing fees. *Id.* at 381. The companies argued that a statute delegating authority to the Public Utility Commission ("PUC") to regulate telecommunications services in Oregon gave the PUC "the exclusive authority" for such regulation. *Id.* at 396-97. The Court disagreed, explaining that "[w]hile [the state statute] confers authority on the PUC, it does not expressly confer *exclusive* authority on the PUC."[5] *Id.* at 397 (emphasis in original). In contrast here, ORS 279.845(3) expressly provides that DAS' authority is exclusive, prohibiting DAS from delegating "any duty imposed under this section to any person or public agency outside of the department."

Accordingly, and like the PUC's duties in *Brown*, regulation of the OFP occurs exclusively at the state level—leaving no room for the City to alter the requirements applicable to OFCs. Indeed, the Oregon Court of Appeals has confirmed DAS' wide-sweeping authority to regulate the OFP and OFCs. *See, e.g., BWK, Inc. v. Dept. of Admin. Servs.*, 231 Or. App. 214,

---

[5] The statute at issue there, ORS 759.030(1), provided: "the Public Utility Commission shall have authority to determine the manner and extent of regulation of telecommunications services within the State of Oregon." *AT & T Commc'ns of the Pac. Nw., Inc. v. City of Eugene*, 177 Or. App. 379, 394 (2001), *rev den*, 334 Or 491 (2002) (quoting ORS 759.030(1)).

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

227 (2009), *rev den*, 347 Or. 718 (2010) (rejecting challenge to DAS' authority and price determination, explaining "[t]he legislature charged DAS with the implementation and administration of the [OFP]" and "ORS 279.845(1)(a) describes the duty of price determination in broad terms"); *Indep. Contractors Rsch. Inst. v. Dep't of Admin. Servs.*, 207 Or. App. 78, 82 (2006) (rejecting challenge to validity of DAS rules implementing the OFP, explaining "[f]or implementation and administration of the [OFP], and in particular for specifying appropriate products, services, prices, and providers, the legislature turned to DAS.").[6]

The exclusivity of this state statutory and regulatory scheme makes sense given the necessity of uniformity to further the legislature's statewide policy objective "to encourage and assist individuals with disabilities to achieve maximum personal independence within their communities through productive gainful employment . . . ." ORS 279.840. The legislature chose to further that objective "by assuring an expanded and constant market for products and services produced by qualified nonprofit agencies for individuals with disabilities[.]" *Id.* The uniformity necessary to effectuate the purpose of the state scheme precludes local laws that attempt to add or modify requirements. *See Syngenta Seeds, Inc. v. Cty. of Kauai*, 842 F.3d 669, 679 (9th Cir. 2016) ("The Hawaii legislature's goal of establishing a uniform system of pesticide control and its delegation, in furtherance of this goal, of rulemaking and licensing authority to the Department of Agriculture clearly evince an intent to preempt local regulation."). Without uniformity—if Public Agencies could individually create additional contracting requirements applicable to OFP contractors, or delegate to others the authority to do so—the state scheme would collapse. *See id.* ("[A uniform] state statutory scheme cannot reasonably be interpreted to allow for supplemental local regulation because differing local laws would defeat the goal of uniformity.").

To ensure uniformity across Oregon, DAS regulations prohibit cities from creating rules that alter the terms of contracts subject to the OFP. Among other things, they prohibit cities from

---

[6] Until 2020, the OFP was called the Qualified Rehabilitation Program. *See* DAS Administrative Order 6-2020 (effective 12/01/2020) (changing name from "QRF Program" to "Oregon Forward"). That is the term used in the cases cited here.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

developing "specifications that inhibit or tend to discourage" contracting with Oregon Forward contractors. OAR 125-055-0010(1)(a). They expressly prohibit cities from altering pricing terms. OAR 125-055-0010(1). And, OAR 125-055-0006 acts as a prohibition on cities, stating "[Oregon Forward Contractors] and Agencies may not execute or implement any contract under the Oregon Forward Program until the Department has transmitted its notice of the Price determination."

The City's Labor Peace Requirement purports to add contracting requirements to the OFP, or to delegate to unions the power to do so, contrary to the legislature's express wishes. The Labor Peace Requirement thus is expressly preempted as applied to DePaul.

> (2)     **The Labor Peace Requirement does not fall within the City's limited authority under the OFP to regulate labor standards.**

In the statute immediately following the legislature's delegation of duties exclusively to DAS, the legislature carved out limited authority for public agencies to regulate labor standards under the OFP and provided two means of disqualification of OFCs based on those standards. *See* ORS 279.850(2)(a) ("A public agency may require in any agreement with a [OFC] under ORS 279.835 to 279.855 that the [OFC] comply with applicable local ordinances or resolutions that govern labor standards."); ORS 279.850(2)(b) (providing two means of disqualification of OFC based on labor standards).

The Labor Peace Requirement is <u>not</u> a "local ordinance or resolution that govern[s] labor standards" within the meaning of ORS 279.850 or DAS rules:

> "<u>For the purposes of ORS 279.850</u>, local ordinances or resolutions that govern labor standards means ordinances or resolutions, duly adopted by a local government body (as defined in ORS 174.116), that regulate employee working conditions. Working conditions consist of employee:
>
> (a) Wage rates or salaries;
>
> (b) Hours of labor, work days, leave, and workplace safety conditions;

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

(c) Health insurance or health care benefits;

(d) Retirement or pension benefits; and

(e) Dispute resolution procedures."

OAR 125-055-0040(8) (emphasis added).

The inclusion of five categories of ordinances or resolutions means that all others are excluded—a rule of statutory interpretation sometimes called *expressio unius est exclusio alterius* ("expressio unius"), the expression of one is the exclusion of others. It's a close relative of Oregon's codified interpretive rule that, "[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]" ORS 174.010; *see, e.g., Comcast Corp. & Subsidiaries v. Dep't of Revenue*, 363 Or. 537, 545 (2018) (rejecting proposed statutory interpretation because it "would require this court to insert" words the legislature chose not to include).

Application of expressio unius has two layers here. First, the legislature's provision of authority for public agencies to regulate labor standards under the OFP is further evidence that public agencies have no authority to regulate any other aspect of the OFP. In other words, it's further evidence that the legislature intended the OFP to be exclusive. If it were not exclusive, then there would be no need for the legislature to insert a statutory provision permitting public agencies to regulate labor standards. That the legislature did so indicates that public agencies otherwise lack authority to regulate labor standards, or other aspects of OFP contracting, due to the exclusivity of the state scheme.

Second, DAS limited that labor standards exception to the regulation of five specific working conditions. Because DAS did not include a labor peace requirement in that list, expressio unius instructs that DAS intended to prohibit local labor peace requirements. *See Waddill v. Anchor Hocking, Inc.*, 330 Or. 376, 381-82 (2000) (concluding that because text of ORCP 21 G(3) identifies three times at which a party may assert defense of failure to state

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

ultimate facts constituting a claim, "the specification of those three times indicates an intent on the part of the Council on Court Procedures to limit the times at which a party may raise that defense to those three and to make the defense otherwise unavailable"); *Higley v. Flagstar Bank, FSB*, 910 F. Supp. 2d 1249, 1260 (D. Or. 2012) (expressio unius "creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions") (quoting *Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991)).

Like the legislature, DAS in carrying out its rulemaking authority knows how to create a non-exhaustive list: by using the phrase "including, but not limited to . . . ." That's precisely what DAS did in a neighboring section of the same rule. *See* OAR 125-055-0040(10) ("Special circumstances are circumstances beyond the reasonable control of the individual or organization including, but not limited to . . . .") (emphasis added). In contrast, DAS did not include that open-ended phrase when listing working conditions subject to regulation by municipalities in OAR 125-055-0040(8). That is further evidence of DAS' intent to provide an exhaustive list of working conditions. *See Colby v. Gunson*, 224 Or. App. 666, 672 (2008) ("If legislative intent to completely regulate an area can be inferred from the text or context of a law, then the statement of the regulation necessarily negates a different rule.").

Indeed, it wouldn't make sense to include labor peace requirements in DAS' list of employee working conditions subject to local regulation. Each of those employee working conditions has at least one thing in common: they regulate agreements between the employer and employee. But the City's Labor Peace Requirement purports to mandate an agreement between an employer and a union, including one that hasn't even yet begun to represent the employer's employees. Accordingly, because it lacks a common characteristic of all the other listed working conditions, the interpretative rule *noscitur a sociis* further confirms the exclusion, and thus prohibition of, local laws mandating labor peace requirements. *See King City Rehab, LLC v. Clackamas Cty.*, 214 Or. App. 333, 341 (2007) ("Under the principle of noscitur a sociis, terms in a list are interpreted in light of the common characteristics of other terms in the same list.").

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

### b. Legislative history confirms the exclusive nature of the state scheme.

The legislature originally enacted the statutory scheme now known as the OFP in 1977. The legislature did so to provide steady contracts for OFCs and the individuals with disabilities they employ. Testifying in support of the bill, Tom Spauling of the Peal Buck Center explained that the bill would help alleviate some of the issues unique to OFCs. *See* Reel-to-reel recording, House Social Services Committee, H.B. 3093, March 31, 1977, audio reel 14, side 2 ("Another difficulty that department's priorities were aimed at products at the lowest possible price. This is their proper function. However, since we have minimal sales personnel, we must have help in finding out what is needed and in securing the bid."). Mr. Spaulding believed that "house bill 3093 will solve most of these problems." *Id.* The bill "provides long term commitment and follow up by a group that does not require frequent reeducation to our needs[,]" and it "obviates the need for a sales force competitive with private firms and largely unavailable to us due to lack of capital." *Id.*

The testimony of a representative of DAS' predecessor, the Oregon Department of General Services,  indicates the exclusive nature of the state scheme:

> "We think enough of this that we believe that <u>the general principle of purchasing in the state</u> which is that you must have open competitive bid and purchase from the lowest bidder can in the limited case of sheltered workshops with specific products be <u>set aside</u>." [7]

Reel-to-reel recording, House Social Services Committee, H.B. 3093, May 3, 1977, audio reel 20, side 1 (testimony of Larry Sprecher) (emphasis added). That the legislature "set aside" general public contracting principles further confirms the exclusive nature of the state scheme. Indeed, the department's representative further testified that the bill gave the Department of General Services the authority it needed to implement and administer the OFP. *See id.* ("In

---

[7] "Sheltered workshops" was the original term for the non-profit organizations that employed individuals with disabilities.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

reality simply puts it [sic] over into the hands of General Services, charges us to make sure that we do purchase from these people and gives us the law changes we need to do that.").

Accordingly, the text, context, and legislative history of the OFP show an unambiguous legislative intent to create an exclusive state scheme. The City's Labor Peace Requirement targets only services subject to the OFP—janitorial, unarmed security, and industrial laundry services—and purports to subject OFCs to the unrestricted wishes of unions by requiring OFCs to contract with them. The Labor Peace Requirement is therefore expressly preempted by the OFP.

### 3.     Implied Preemption - the Labor Peace Requirement cannot operate concurrently with the OFP.

Even if the OFP does not expressly preempt the Labor Peace Requirement, it does impliedly preempt it. A local law is subject to implied preemption "to the extent that it cannot operate concurrently with the state law, *i.e.*, the operation of local law makes it impossible to comply with a state statute." *Thunderbird Mobile Club, LLC v. City of Wilsonville*, 234 Or App 457, 474 (2010), *rev den*, 348 Or 524 (2010).  For the doctrine to apply, the state and local laws must govern the same things. *See Qwest Corp. v. City of Portland*, 275 Or. App. 874, 895-96 (2015) (holding there was no preemption because the state law was narrower than plaintiff urged).

Here, the broad and exclusive authority of DAS pursuant to the OFP statutes, and the need for statewide uniformity, demonstrate that the OFP and Labor Peace Requirement cannot operate concurrently. Indeed, in *Proctor v. City of Portland*, 245 Or. App. 378 (2011), the Court of Appeals held that a statute broadly prohibiting cities from imposing business license taxes on certain real estate brokers precluded the City from enforcing a local rule on that topic. *Id.* at 392. The court was not persuaded by the City's argument that the two statutes governed different things because the effect of the local rule "subject[ed] plaintiffs to precisely the same harm the 1987 legislature intended to prevent." *Id.* So too, here. By creating further conditions on OFP contracting, the Labor Peace Requirement subjects OFCs to the same harm the legislature

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

intended to prevent: barriers to entry and lack of uniformity. As a result of that conflict, the Labor Peace Requirement is impliedly preempted by the OFP.

Worse, and as further evidence of incompatibility, the Labor Peace Requirement contains absolutely no limitations on what the unions may require OFPs to agree to in exchange for the ability to contract with the City as part of what is supposed to be a State-administered set-aside program. This carte blanche delegation of power to a private party directly contradicts ORS 279.845(1)(c) and ORS 279.845(3), which expressly prohibit public agencies or anyone other than DAS from adding to or modifying to the requirements of the OFP. *See deParrie*, 133 Or. App. at 619 (when statute preempts local legislation, "[s]uch local legislation is *ipso facto* in conflict with the statute" and "[f]or the same reason, the defined local legislation 'cannot operate concurrently' with the statute"). The City thus essentially has delegated to unions the ability to impose whatever conditions they'd like on OFCs, in exchange for the unions' agreement not to picket or stop work, even though the City could not itself impose such conditions. The Labor Peace Requirement thus cannot operate concurrently with the OFP.

The Labor Peace Requirement not only conflicts with DAS' authority to regulate OFP contracting, but also conflicts with specific DAS rules. DAS prohibits public agencies from "develop[ing] specifications that inhibit or tend to discourage Public Contracting with OFC providers for the acquisition of Oregon Forward-produced products or services." OAR 125-055-0010(1)(a). As explained above, the Labor Peace Requirement inhibited DePaul from obtaining the contract with the City and, for the same reasons, the Labor Peace Requirement is likely to inhibit or tend to discourage contracting by other OFCs. For that additional reason, the Labor Peace Requirement cannot operate concurrently with the OFP and thus is impliedly preempted.

/ / /

/ / /

/ / /

/ / /

/ / /

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

## V. __CONCLUSION__

For the foregoing reasons, this Court should find that the City's Labor Peace Requirement is expressly or impliedly preempted by the OFP as applied to DePaul. The Court should enter summary judgment in favor of DePaul on count 2 of its First Claim for Relief.

Dated: May 5, 2022.                          SNELL & WILMER L.L.P.

                                             _s/ Clifford S. Davidson_
                                             Clifford S. Davidson, OSB No. 125378
                                             csdavidson@swlaw.com
                                             Drew L. Eyman, OSB No. 163762
                                             deyman@swlaw.com

                                             Attorneys for Plaintiff DePaul Industries, Inc.

4887-0744-3481

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800