ANNE MILLIGAN, OSB #111615
Deputy City Attorney
anne.milligan@portlandoregon.gov
FALLON NIEDRIST, OSB #145146
Deputy City Attorney
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **DEPAUL INDUSTRIES, INC.,** | 3:21-cv-01792-HL |
| **PLAINTIFF,** | |
| v. | **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIM 1, COUNT 2 AND MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **CITY OF PORTLAND,** | |
| **DEFENDANT.** | |

## MEMORANDUM OF LAW

**I.   INTRODUCTION**

As the parties mutually advised the Court on April 26, 2022, Plaintiff's Motion for Partial Summary Judgment was filed before the parties engaged in substantial discovery to ascertain whether early resolution could be had on a pure matter of law. On May 5, 2022, Plaintiff DePaul Industries ("Plaintiff" or "DPI") filed a Motion for Partial Summary Judgment on Claim 1, Count 2 of its Complaint ("Motion"). Plaintiff asserts that the City's labor peace agreement requirement

Page  1  – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
           SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
           DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

in its Sustainable Procurement Policy is preempted by the Oregon Forward Program ("OFP") codified at ORS 279.835 to 279.855. The Court should deny Plaintiff's Motion because Plaintiff has failed to demonstrate that the OFP either expressly or impliedly preempts the City's labor peace agreement requirement.

## II.   STATEMENT OF FACTS

### A.   The City adopted a labor peace agreement requirement.

In 2003, Portland City Council adopted its Sustainable Procurement Policy, which is codified as ADM-1.09 (the "Policy"). (ECF No. 12, Answer, ¶ 13). The Policy generally covers the City's procurement practices, in recognition that "the products and services the City purchases have inherent social, human health, environmental, and economic impacts." (ECF No. 18, Joint Concise Statement of Material Facts ("Statement of Facts"), Ex. 1, p. 4). The Policy's purpose is stated as follows: "[B]y understanding and taking responsibility for the full, life cycle impacts and costs of goods and services associated with City purchases, the City reduces risk, practices fiscal responsibility, reduces adverse social and environmental impacts, and contributes to sustainable development in general." (*Id.*)

On March 25, 2020, Portland City Council passed Resolution No. 37483. (Statement of Facts, ¶ 5). That Resolution amended the Policy to include a labor peace requirement for all janitorial, security, and industrial laundry service contracts (the "Labor Peace Requirement"). (*Id.*, ¶¶ 5–6, Ex. 1; Answer, ¶ 14). Attachment 4 to ADM-1.09 specifically addresses the Labor Peace Requirement, which provides in part:

> Labor peace shall be defined as a written provision in an agreement or contract whereby a labor organization (as defined by 29 U.S.C. §152(5)), for itself and its members, agrees to refrain from engaging in any picketing, work stoppages, or any other economic interference with the contractor's or subcontractor's performance of services. The labor peace provision must be signed or certified by an authorized representative of the labor organization not more than one year prior to the contractor providing such documentation and

Page  2 – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
             SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
             DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

> must be effective for the duration of the service contract. This labor peace requirement expires at the termination of the contract between the City and the contractor.
>
> . . .
>
> Any failure to comply with this requirement and any service disruption as a result of a labor dispute will subject a contractor to liquidated damages and possible termination of the service contract.

(Statement of Facts, Ex. 1, p. 25). In short, the Policy requires janitorial, security, and industrial laundry contractors to obtain a labor peace agreement with a union before the City will contract with that entity for services, with an exception not applicable here.[1]

    B.    <u>DPI did not obtain a labor peace agreement per the Policy.</u>

DPI is a qualified nonprofit agency for individuals with disabilities under the OFP and provides unarmed security services. (Statement of Facts, ¶¶ 2, 10). In November 2021, DPI and the City began to finalize a Work Order Contract under which DPI would perform unarmed security services for the Portland Parks and Recreation Bureau. The effective date of the contract was to be December 1, 2021. (*Id.*, ¶ 10). On December 2, 2021, the City informed DPI that a labor peace agreement would be required for the Work Order Contract to be awarded, consistent with the Policy. (*Id.*, ¶ 11). On December 7, 2021, when it became clear that DPI did not have nor would be able to obtain a labor peace agreement, the City told DPI it would not be awarded the Work Order Contract because DPI had not obtained a labor peace agreement. (*Id.*, ¶ 12).

    C.    <u>The Oregon Forward Program governs only certain aspects of local government procurement.</u>

The OFP, first adopted in 1977, regulates certain aspects of government procurement. The

---

[1] Plaintiff, in its Motion for Partial Summary Judgment, provides numerous additional facts about the City's passage of the Labor Peace Requirement, such as pointing to an internal email which states, "Allows unions to build in roads into non-unionized shops with an assurance that employers won't stand in the way of unionization efforts (Don't include in public message)." (Plaintiff's Motion, p. 1; Statement of Facts, Ex. 2). These facts, while undisputed, are not material to the central issue before this Court: whether or not the Oregon Forward Program preempts the City's Labor Peace Requirement. The question presented to this Court is whether the legislature intended to preempt Home-Rule cities from regulating in this area—not the City's subjective intention in passing the ordinance.

Page 3 – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
           SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
           DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

express purpose of the OFP is to:

> further the policy of this state to encourage and assist individuals with disabilities to achieve maximum personal independence within their communities through productive gainful employment by assuring an expanded and constant market for products and services produced by qualified nonprofit agencies for individuals with disabilities, thereby enhancing their dignity and capacity for self-support.

ORS 278.840. The OFP achieves this policy objective by requiring public agencies to procure goods or services at a price set by the Department of Administrative Services ("DAS") through a qualified nonprofit agency for individuals with disabilities (*i.e.*, through an OFP contractor), provided that the product or service sought is available through the OFP. ORS 279.850(1)(a). However, a public agency is not required to obtain the product or service through a qualified nonprofit agency for individuals with disabilities if:

> (A) All of the qualified nonprofit agencies for individuals with disabilities on the procurement list that applies to the public agency have a record in the previous three years of repeatedly violating, *or are not now in compliance with, applicable local ordinances or resolutions that govern labor standards*; and
>
> (B) The person, for a period of 90 days after the person enters into an agreement with the public agency, offers to employ the employees of a qualified nonprofit agency for individuals with disabilities from which the public agency would have procured the product or service but for the failure of the qualified nonprofit agency for individuals with disabilities to comply with an applicable local ordinance or resolution that governs labor standards.

ORS 279.850(2)(a)–(b) (emphasis added). DAS has defined "local ordinances or resolutions that govern labor standards" to mean: "ordinances or resolutions, duly adopted by a local government body (as defined in ORS 174.116), that regulate employee working conditions. Working conditions consist of employee: . . . Dispute resolution procedures." OAR 125-055-0040(8). In other words, the OFP expressly contemplates local jurisdictions having ordinances and resolutions

Page  4  –  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
 SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
 DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

which govern working conditions of their contractors, and which override the procurement requirements of the OFP.

To implement the OFP, DAS was vested with specific duties by the legislature. DAS is required to:

> (a) Determine the price of all products manufactured and services offered for sale to the various public agencies by any qualified nonprofit agency for individuals with disabilities. The price shall recover the cost of raw materials, labor, overhead, delivery costs and a margin held in reserve for inventory and equipment replacement;
>
> (b) To revise such prices from time to time in accordance with changing cost factors;
>
> (c) To make such rules regarding specifications, time of delivery and other relevant matters of procedure as shall be necessary to carry out the purposes of ORS 279.835 to 279.855,[2] 279A.025(4)[3] and 279C.335[4]; and
>
> (d) To promote the requirements under ORS 279.835 to 279.855.

ORS 279.845(1). DAS is also tasked with the duty to "establish and publish a list of sources or potential sources of products produced by any qualified nonprofit agency for individuals with disabilities and the services provided by any such agency that the department determines are suitable for procurement by public agencies . . ." ORS 279.845(2). The legislature provided DAS "may not delegate any duty imposed under this section to any person or public agency outside of the department." ORS 279.845(3).

As part of DAS's rulemaking authority under ORS 279.845, DAS promulgated OAR 125-055-0010, which reads, in relevant part, "Agencies must not develop specifications that inhibit or tend to discourage Public Contracting with OFC providers for the acquisition of Oregon Forward-

---

[2] These statutes are the codification of the Oregon Forward program.
[3] ORS 279A.025(4) excludes qualified nonprofit agencies providing employment opportunities for individuals with disabilities from parts of the Public Contracting Code.
[4] ORS 279C.335 relates to the competitive bid process and exceptions.

Page  5  – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
         SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
         DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

produced products or services." OAR 125-055-0010(1)(a).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of such a genuine issue, and for this purpose the material it lodges, and inferences therefrom, must be viewed in the light most favorable to the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 (1970). If the movant satisfies their initial burden, it then rests with the opponent to set forth specific facts showing that there remains a genuine issue for trial. Fed. R. Civ. P. 56(e). No defense to an insufficient showing, however, is required. *Adickes*, 398 U.S. at 160–61. Pure questions of law are appropriate for summary judgment. *Schrader v. Idaho Dep't of Health & Welfare*, 768 F.2d 1107, 1110 (9th Cir. 1985).

### IV. LEGAL ANALYSIS

Plaintiff's Motion turns on whether the OFP preempts the City's Labor Peace Requirement in its Sustainable Procurement Policy, either expressly or impliedly, as applied to DPI as an OFP contractor. DPI carries a heavy burden to show that the City's Labor Peace Requirement is preempted by state law and fails to do so here: the legislature did not unambiguously express an intention for the OFP to operate in exclusion from local regulations on contracting, nor has DPI shown the City's Labor Peace Requirement cannot operate concurrently with the OFP. Because the OFP does not preempt the City's Labor Peace Requirement, the Court must deny Plaintiff's Motion and dismiss Plaintiff's Claim 1, Count 2 with prejudice.

///

///

///

Page  6 – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
    SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
    DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

A. <u>Under the Oregon Constitution, a home-rule city's ordinance is presumed valid, and state law will not preempt it unless the pertinent statute is "unambiguous" and the ordinance cannot be reconciled with it.</u>

Federal courts apply state law to determine issues of state preemption. *See First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1279 (9th Cir. 2017) ("Whether a California state law preempts a local law is governed by Article XI, section 7 of the California Constitution[.]"); *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 958 (9th Cir. 2002) (applying California law regarding state preemption).

As the Oregon Supreme Court has long held, the Home Rule amendments of the Oregon Constitution—Article IV, section 1(5), and Article XI, section 2— altered the relationship between cities and the state by granting cities extensive authority to legislate "without having to obtain statutory authorization from the legislature, as was the case before the amendments." *La Grande/Astoria v. PERB*, 281 Or. 137, 142, *adh'd to on recons.*, 284 Or. 173 (1978). Cities became separate legal entities from the state, and the legislature's power to trump local legislation was curtailed. *See id.*, 281 Or. at 156 (holding that, under the Home Rule amendments, state statutes trump local law only if the legislature "clearly intended to do so," and that the legislature is barred from interfering with the "structure and procedures" of home-rule cities).

Under the Oregon Constitution, "home-rule municipalities possess authority to enact substantive policies, even in areas also regulated by state law, so long as the local enactment is not incompatible with state law[.]" *Gunderson v. City of Portland*, 352 Or. 648, 659 (2012) (citation omitted). This means that, in Oregon, "the occupation of a field of regulation by the state has no necessary preemptive effect" on a city ordinance. *Rogue Valley Sewer Servs. v. City of Phoenix*, 357 Or. 437, 455 (2015) (quoting with approval *Thunderbird Mobile Club v. City of Wilsonville*, 234 Or. App. 457, 474, *rev. den.*, 348 Or. 524 (2010)). On the contrary, the Home Rule amendments embody a "presumption against preemption" that a plaintiff can overcome only by demonstrating that "the legislature 'unambiguously expresse[d] an intention to preclude local government from regulating' in the same area governed by an applicable statute." *Id.*, 357 Or. at

Page 7 – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

454 (citing *Gunderson*, 352 Or. at 663). Rebutting that presumption is "a high bar to overcome." *Id.*

Because "[i]t is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws," Oregon courts will not conclude that state law preempts a city ordinance unless both cannot be reconciled. *State ex rel. Haley v. City of Troutdale*, 281 Or. 203, 210 (1978) (quoting *La Grande/Astoria*, 281 Or. at 148). Not only must the intent to preempt be "unambiguous," but so too must the scope of the preemption itself. *See Gunderson*, 352 Or. at 662–63 (rejecting claim of express preemption because, even if preemption were "plausible" based on text, context, and legislative history, it was not "the only inference that was plausible."); *Rogue Valley Sewer Servs.*, 357 Or. at 455 ("[W]e see no reason to imply . . . broad preemption of the entire field of utility regulation" from statutes pertaining to certain utilities).

The analytical process for determining whether state law preempts a local law in Oregon is well established and summarized by the Oregon Supreme Court in *La Grande/Astoria*:

> [B]oth municipalities and the state legislature in many cases have enacted laws in pursuit of substantive objectives, each well within its respective authority, that were arguably inconsistent with one another. In such cases, the first inquiry must be whether the local rule in truth is incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive. It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent. However, when a local enactment is found incompatible with a state law in an area of substantive policy, the state law will displace the local rule.

281 Or. at 148–49 (citations and footnote omitted).

The question, then, is whether the City's Labor Peace Requirement is "incompatible" with state law, "either because both cannot operate concurrently or because the legislature meant its law

Page  8  – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
            SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
            DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

to be exclusive." *Id.* Here, Plaintiff has the heavy burden of showing that state law preempts the City's ordinance. *See Rogue Valley Sewer Servs.*, 357 Or. at 454 (2015) ("A party that challenges a home-rule city's authority as preempted by state law is required to show that the legislature 'unambiguously' expressed its intent—a high bar to overcome.") (quoting *Gunderson*, 352 Or. at 663). Because the Labor Peace Requirement was promulgated under Portland's constitutional home-rule authority, the state statute's preemption of the ordinance must be unambiguous; if there is ambiguity, the ordinance is not preempted. *Cf. State ex rel. Haley*, 281 Or. at 211 (legislative intent to preempt certain local construction standards was "not unambiguously expressed" and therefore not preempted). Plaintiff cannot meet that burden here.

   B. <u>The Oregon Forward Program, rather than stating an "unambiguous" intent to preempt municipalities from having labor peace requirements, expressly contemplates such local restrictions.</u>

  To determine whether a statute preempts an ordinance, the statute must be interpreted. Oregon courts interpret statutes by following the approach laid out in *PGE v. Bureau of Labor & Indus.*, 317 Or. 606 (1993) (superseded in part by statute), and *State v. Gaines*, 346 Or. 160 (2009). The "paramount goal" of that approach is "discerning the legislature's intent." *Gaines*, 346 Or. at 171. Because "there is no more persuasive evidence of the intent of the legislature than the words by which [it] undertook to give expression to its wishes," the analysis looks primarily to statutory text and context. *Id.* (internal quotation marks and citations omitted). In so doing, words of common usage are given their plain, natural, and ordinary meaning. *PGE*, 317 Or. at 610–612. Courts also may consider legislative history "where that legislative history appears useful to the court's analysis." *Gaines*, 346 Or. at 172. While legislative history cannot be used to "rewrite" a statute, it may be used either "to identify or resolve ambiguity in legislation." *Halperin v. Pitts*, 352 Or. 482, 495 (2012) (citing *U.S. West Communications v. City of Eugene*, 336 Or. 181, 188 (2003)). Finally, "[i]f the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction

Page  9  –  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
   SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
   DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

to aid in resolving the remaining uncertainty." *Gaines*, 346 Or. at 172.

Here, nothing in the OFP expressly states that cities are not permitted to pass their own public contracting requirements, such as a labor peace requirement; in fact, the statutory scheme contemplates public agencies having such requirements. While ORS 279.850 requires public agencies to procure goods or services through an OFP contractor when available, so too does that same statute specifically allow public entities to *not* contract with an OFP contractor that is not in compliance with "applicable local ordinances or resolutions that govern labor standards." ORS 279.850(2)(a). DAS defined that phrase to include "dispute resolution procedures." OAR 125-055-0040(8).

While DAS has not defined "dispute resolution procedures," dictionary definitions provide a commonsense interpretation of the phrase. "Dispute" is defined as "verbal controversy: debate" or "quarrel." *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/dispute. "Resolution" is defined as "the act or process of resolving: such as: the act of answering: solving; the act of determining." *Id.*, available at https://www.merriam-webster.com/dictionary/resolution. "Procedure" is defined as "a particular way of accomplishing something or of acting" or "a series of steps followed in a regular definite order." *Id.*, available at https://www.merriam-webster.com/dictionary/procedure. All put together, the plain, ordinary meaning of "dispute resolution procedures" would be "a particular way of resolving or determining a controversy."

The City's Labor Peace Requirement—and indeed, any labor peace agreement—is just that: a particular way of preemptively resolving labor disputes. The Labor Peace Requirement defines "labor peace" as "a written provision in an agreement or contract whereby a labor organization (as defined by 29 U.S.C. § 152(5)), for itself and its members, agrees to refrain from engaging in any picketing, work stoppages, or any other economic interference with the contractor's or subcontractor's performance of services." (Statement of Facts, Ex. 1, p. 25). The

Page 10 – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Labor Peace Requirement goes on to state, "Any failure to comply with this requirement and any service disruption as a result of a *labor dispute* will subject a contractor to liquidated damages and possible termination of the service contract." (*Id.*) (Emphasis added).

It is well-understood that picketing, work stoppages, and similar economic interferences are strategies labor organizations can use to apply pressure to employers to resolve disputes, and often constitutes a public statement of the dispute itself. *See, e.g.*, *N.L.R.B. v. Radio & Television Broad. Eng. Union*, 364 U.S. 573, 580 (1961) (noting the historical context that "prior to the enactment of the Taft-Hartley Act, labor, business and the public in general had for a long time joined in hopeful efforts to escape the *disruptive consequences of jurisdictional disputes and resulting work stoppages*.") (emphasis added); *Bhd. of Locomotive Engineers v. Louisville & N. R. Co.*, 373 U.S. 33, 34–35 (1963) (involving union threat to call a strike where parties could not agree on meaning of a lost wages award); *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 390 (1974) (involving compelling arbitration of a safety dispute and enjoining a work stoppage related to that dispute); *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Loc. Union No. 1936*, 680 F.2d 594, 596 (9th Cir. 1982) (recognizing "a union may lawfully picket a primary employer with which it has a labor dispute"); *see also* 29 U.S.C. § 158(b)(4) (prohibiting the use of strikes and work stoppages for certain purposes, such as recognizing a particular bargaining unit). The City's Labor Peace Requirement forestalls such strategies by altering the procedures by which the parties can resolve disputes: limiting economic interferences by a labor organization. Thus, the express language of the Labor Peace Requirement and its practical application demonstrate that it is a "local ordinance[] or resolution[] that govern[s] labor standards" by virtue of being a "dispute resolution procedure." ORS 279.850; OAR 125-055-0040(8).

At minimum, because the OFP explicitly contemplates public entities having "dispute resolution procedures"—like the City's Labor Peace Requirement—as a reason by which a public entity can decline contracting with an OFP contractor, the OFP does not "unambiguously" preempt

Page 11 – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

the City's Labor Peace Requirement. At best, any such intent by the legislature is ambiguous, which under Oregon law is not sufficient to preempt a local ordinance. More realistically, the legislature appears to have expressly or impliedly expected such regulation by public entities. Thus, Plaintiff has failed to meet the high burden of showing the City's Labor Peace Requirement is preempted by the OFP. Plaintiff's Motion for Partial Summary Judgment should be denied and its Claim 1, Count 2 should be dismissed with prejudice.

> C. The Oregon Forward Program does not evidence any "unambiguous" legislative intent to preempt local municipalities from having labor peace requirements.

Plaintiff argues that the OFP both expressly and impliedly preempts the City's Labor Peace Requirement. Even if this court rejects the City's argument that the OFP actually *contemplates and permits* such regulation by public entities, Plaintiff still fails to meet its heavy burden of showing preemption.

Plaintiff argues that because the legislature "delegated OFP duties exclusively to DAS, prohibiting DAS from delegating 'any duty imposed under this section to any person or public agency outside of the department,'" the legislature "unambiguously prohibited public agencies from altering the OFP." (Plaintiff's Motion, p. 11) (citing ORS 279.845(3)). Plaintiff further explains, "[b]y establishing a comprehensive statutory scheme, empowering DAS to maintain and implement that scheme, and prohibiting DAS from delegating any of its duties under that scheme per ORS 279.845(3), the legislature unambiguously created an exclusive state scheme, which prohibits public agencies from altering the OFP." (*Id.*, p. 12). Plaintiff relies on case law that stands for the premise that when the legislature invests exclusive authority to the state, such a delegation acts as preemption. *See, e.g.*, *Brown v. Spokane, P. & S. Ry. Co.*, 248 Or. 110 (1967).

However, Plaintiff's argument misses the mark. While Plaintiff is correct that the legislature delegated oversight and rulemaking authority for the OFP to DAS, and prohibited DAS from delegating that authority to another public entity (ORS 279.845), Plaintiff fails to note that the plain text of the OFP *also* acknowledges local regulations around labor conditions and permits

Page  12 – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

public entities to decline contracting with OFP contractors who do not meet those standards.[5] ORS 279.850(2)(a) permits a public agency to not contract with an OFP contractor if the OFP contractor is "*not now in compliance with, applicable local ordinances or resolutions that govern labor standards*." (Emphasis added). Thus, contrary to Plaintiff's assertion, the legislature did not create a statutory scheme that vested *exclusive* authority to the state on public contracting with OFP contractors; instead, the legislature clearly contemplated that local jurisdictions would retain and exercise authority to govern their own labor standards when it came to public contracting. At a minimum, this open door creates ambiguity as to the legislature's intent to exclusively regulate home-rule municipalities' authority to set labor standards for their contractors. Plaintiff's argument for express preemption thus must fail as a matter of law.

Similarly, Plaintiff's argument for implied preemption must also fail. A local law is subject to implied preemption "to the extent that it cannot operate concurrently with the state law, *i.e.*, the operation of local law makes it impossible to comply with a state statute." *Thunderbird Mobile Club, LLC*, 234 Or. App. at 474. Plaintiff asserts that "the broad and exclusive authority of DAS pursuant to the OFP statutes, and the need for statewide uniformity, demonstrate that the OFP and Labor Peace Requirement cannot operate concurrently." (Plaintiff's Motion, p. 20). Plaintiff further argues that the City's Labor Peace Requirement "essentially has delegated authority to unions the ability to impose whatever conditions they [would] like on OFCs, in exchange for the unions' agreement not to picket or stop work, even though the City could not itself impose such conditions." (*Id.*, p. 21).

For similar reasons to those explained above, Plaintiff's argument again misses the mark. First, DAS's authority extends only to the OFP, specifically to price-setting goods and services and operating the Program. DAS's authority *does not* extend to regulating interactions between

---

[5] Plaintiff also sets forth in its Motion legislative history concerning the passage of the OFP. That legislative history mostly focused on the issue of setting competitive rates for goods and services, which is not relevant to whether the legislature intended to preempt local regulation of labor conditions, such as labor peace agreements. The legislative history thus is not "useful to the court's analysis." *Gaines*, 346 Or. at 172.

Page  13  –  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

OFP contractors and labor organizations. Plaintiff's argument, if followed through to its logical conclusion, suggests that the OFP would preempt *all* union negotiations in any circumstance, because those negotiations *could* impact OFP contractors' ability to receive work under the OFP. For example, if an OFP contractor were unionized and the union negotiated higher wages, Plaintiff's argument seems to be that such negotiations would be disallowed because DAS price-sets the OFP contractors' work, and therefore indirectly sets how much the OFP contractor has in its budget to pay employees. The legislature did not grant such broad preemptive authority.

Second, Plaintiff is incorrect in its assertion that the City has "essentially delegated authority" to unions to alter the OFP requirements. The Labor Peace Requirement makes no such delegation; it merely requires a labor peace agreement to avoid work stoppages during the parties' contract. Should a union demand terms which violate the requirements of the OFP, an OFP contractor would have other recourse: administrative review through the Public Contracting Code. Discussed in more detail below, if DPI disagreed with the City's procurement requirements, including problems obtaining a labor peace agreement because a union was demanding terms which violated the OFP, it should have exhausted its administrative remedies, rather than asserting the City's Labor Peace Requirement was preempted.

Finally, as described extensively above, the OFP clearly contemplates public entities having and enforcing their own labor requirements; therefore, such requirements cannot be contrary to the OFP's implementation, let alone render compliance with the law impossible.

For these reasons, Plaintiff has failed to meet its burden to show the Labor Peace Requirement is preempted. Plaintiff's Motion for Partial Summary Judgment should be denied, and Plaintiff's Claim 1, Count 2 should be dismissed with prejudice.

D. <u>Even if the Labor Peace Requirement "inhibit[s] or tend[s] to discourage" contracting with Oregon Forward contractors such as DPI, this is the wrong forum to challenge the Policy on those grounds.</u>

Finally, Plaintiff alludes several times in its briefing that the City's Labor Peace

Page  14 – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
         SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
         DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

Requirement violates DAS's administrative rule which prohibits public entities from "develop[ing] specifications that inhibit or tend to discourage Public Contracting with OFC providers for the acquisition of Oregon Forward-produced products or services." OAR 125-055-0010(1)(a). (See Plaintiff's Motion, pp. 15–16, 21). However, even if that is the case, Plaintiff's recourse is not to seek a declaration that the OFP *preempts* the City's Labor Peace Requirement, because a rule violation does not preemption make; instead, Plaintiff should have gone through appropriate dispute resolution channels and exhausted administrative remedies.

The OFP is subject to Oregon's Public Contracting Code ("Code"). ORS 279A.025 (the Public Contracting Code applies to "all public contracting" in Oregon). The Public Contracting Code exempts the OFP from some provisions of the Public Contracting Code, but the Code does not exempt the OFP from the administrative exhaustion and judicial review provisions. ORS 279A.025(4); ORS 279B.400 to ORS 279B.425.

The Code provides a mechanism for judicial review when a prospective bidder disagrees with the requirements of the solicitation document or the bid process. ORS 279B.420. These procedures apply to all violations of ORS Chapters 279A and 279B for which "no judicial remedy is otherwise provided in the Public Contracting Code," with some express exceptions not applicable here. ORS 279B.420(1), (3)(c) (a party may seek judicial review under ORS 279B.420 if the "alleged violation [of the Public Contracting Code] deprived the person of the award of the contract or deprived the person of the opportunity to compete for the award of the contract"). The OFP itself does not otherwise provide for any judicial remedy, so the catch-all framework in ORS 279B.420 fills the gap. Under this judicial review provision, a person may not seek judicial review unless "[t]he person gave written notice that described the alleged violation to the contracting agency not later than 10 days after the date on which the alleged violation occurred and, regardless of when the alleged violation occurred, not later than 10 days after the date of execution of the

Page 15 – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
         SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
         DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

contract." ORS 279B.420(3)(e). The person must "exhaust[] all administrative remedies the contracting agency provides." ORS 279B.420(3)(f).

Accordingly, if Plaintiff believes that the City's Labor Peace Requirement violated DAS's rule prohibiting specifications which "inhibit or tend to discourage" contracting with OFP contractors such as Plaintiff, then Plaintiff should have appealed the application of the rule per the administrative process set out in ORS 279B.420. Plaintiff failed to do so. Plaintiff's Motion should be denied, and Claim 1, Count 2 should be dismissed.

## V.   CONCLUSION

Defendant City of Portland respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment and dismiss Plaintiff's Claim 1, Count 2 with prejudice, for attorney's fees and costs, and for whatever other relief the Court deems just and appropriate.

Dated: June 10, 2022.

Respectfully submitted,

*/s/ Fallon Niedrist*
FALLON NIEDRIST, OSB #145146
Deputy City Attorney
fallon.niedrist@portlandoregon.gov
ANNE MILLIGAN, OSB #111615
Deputy City Attorney
anne.milligan@portlandoregon.gov
*Of Attorneys for Defendant*

Page  16 – DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
        SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
        DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047