IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DEPAUL INDUSTRIES, INC.,
an Oregon corporation,                                    No. 3:21-cv-01792-HL

                              Plaintiff,                  **OPINION
                                                          AND ORDER**

        v.

CITY OF PORTLAND, a
municipal corporation,

                              Defendant.

---

HALLMAN, United States Magistrate Judge:

        Plaintiff DePaul Industries Inc. ("DePaul") brings this action against Defendant, the City

of Portland ("City"), challenging the City's requirement that certain contractors obtain a "labor

peace agreement."  This matter now comes before the Court on Cross Partial Motions for

Summary Judgment on Plaintiff's first claim, count two, which alleges that this requirement is

preempted under Oregon law.  The Court heard oral arguments on these motions on July 15,

2022.  ECF 27.  For the reasons discussed below, Plaintiff's motion is denied, and Defendant's motion is granted.

## BACKGROUND

### I.    The Oregon Forward Program

In 1997, Oregon enacted the Oregon Forward Program ("OFP") to help individuals with disabilities engage in employment.  *See* Or. Rev. Stat. § ("ORS") 279.840.  The OFP assures "an expanded and constant market for products and services produced by qualified nonprofit agencies for individuals with disabilities. . . ."  *Id.*  Those qualified nonprofit agencies are also known as "OFP Contractors" or "Oregon Forward Contractors" ("OFCs").

To achieve the OFP's purpose, Oregon law requires that when a public agency procures certain products or services, that public agency must—in accordance with the Oregon Department of Administrative Services' ("DAS") rules—procure those products or services from a qualified nonprofit agency.  ORS 279.850(1)(a).  The qualifying products and services subject to this requirement are set forth in a procurement list established and maintained by DAS in ORS 279.845.  A public agency is not required to obtain products or services from a qualified nonprofit agency, however, if  the qualified nonprofit agencies on the procurement list are "not now in compliance with[] applicable local ordinances or resolutions that govern labor standards." ORS 279.850(2)(a).

### II.    The City's Sustainable Procurement Policy

In 2003, the Portland City Council ("City Council") adopted its Sustainable Procurement Policy, which is codified as ADM-1.09.  Answer ¶ 13, ECF 13.  The Sustainable Procurement Policy sets forth guidelines for the City when purchasing products and services.  Joint Concise Statement Material Facts Pl.'s Mot. Partial Summ. J. ("Joint Statement of Material Facts") Ex. 1

at 4, ECF 18.  The Sustainable Procurement Policy's stated purpose is that "by understanding and taking responsibility for the full, life cycle impacts and costs of goods and services associated with City purchases, the City reduces risk, practices fiscal responsibility, reduces adverse social and environmental impacts, and contributes to sustainable development in general." *Id.*

On March 25, 2020, the City Council passed Resolution No. 37482 ("the Resolution"), which amended the Sustainable Procurement Policy. *Id.* ¶¶ 5-7, Exs. 1, 2.  The Resolution enacted a requirement, known as the labor peace requirement, that any contractor who wished to enter into a contract to provide janitorial, unarmed security, or industrial laundry services for the City must be either unionized or enter into a labor peace agreement with a union.  *Id.* Ex. 1 at 25.  A labor peace agreement is currently[1] defined as "a written provision in an agreement or contract whereby a labor organization . . . , for itself and its members, agrees to refrain from engaging in any picketing, work stoppages, boycotting, strikes, or any other economic interference with the contractor's or subcontractor's performance of services."  Joint Status Report Ex. A at 1.  A contractor's failure to comply with the labor peace requirement will "subject a contract to liquidated damages and possible termination of the service contract." *Id.*

## III.    DePaul's Effort to Contract with the City

DePaul is an Oregon public benefit corporation headquartered in Portland, Oregon.  Joint Statement of Material Facts ¶ 1.  DePaul is an OFC and member of the DPI Group, which

---

[1] On July 20, 2022, the City Council passed another resolution that, among other things, amended the labor peace requirement.  *See* Joint Status Report Ex. A, ECF 29.  The July 20, 2022, resolution and amendments to the labor peace requirement were enacted after this Court took the present cross-motions under advisement.  *See* ECF 27; Joint Status Report.  The parties agree that the amended policy does not affect the parties' arguments on the state preemption issue, *see* Joint Status Report 1; thus, the Court's ruling on the parties' cross-motions is made as to the amended labor peace requirement.

provides services to the City through the OFP.  *Id.* ¶¶ 2-3.  DePaul has also been certified by DAS to provide unarmed security services in Multnomah County, Oregon.  *Id.* ¶ 4.  DePaul is the only OFC certified to provide unarmed security services in Multnomah County.  *Id.* ¶ 15, Ex. 4. The City is a public agency within the meaning of OFP.  *Id.* ¶ 14.

In November 2021, DePaul and the City began to finalize a work order contract for unarmed security services, with the effective date of the contract set for December 1, 2021.  *Id.* ¶ 10.  On December 2, 2021, the City informed DePaul that—consistent with the Resolution— DePaul must enter into a labor peace agreement to be awarded the work order contract.  *Id.* ¶ 11.

On December 7, 2021, it became clear that DePaul did not have, or could not obtain, a labor peace agreement.  *Id.* ¶ 12.  Subsequently, the City told DePaul that it would not be awarded the work order contract because DePaul had not obtained a labor peace agreement.  *Id.*

## IV.    The Litigation

On December 10, 2021, DePaul initiated this action against the City.  Compl. 11, ECF 1. DePaul asserts two claims for relief against the City, with the first claim seeking a declaratory judgment on three different grounds in individual counts.  *Id.* ¶¶ 18-40.  Relevant here, count two of DePaul's first claim for relief ("Count Two") seeks a declaratory judgment stating that Oregon law preempts the labor peace requirement against Plaintiff or any other OFC.  *Id.* ¶¶ 23-34.  The parties have now filed Cross Partial Motions for Summary Judgment on Count Two.  Pl.'s Mot. Partial Summ. J., ECF 17; Def.'s Cross Mot. Summ. J., ECF 21.

## LEGAL STANDARD

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Here, the

parties assert, and this Court agrees, that the material facts as to Count Two are not in dispute, and judgment as a matter of law is appropriate.

When Oregon law applies to an issue, this Court must interpret and apply Oregon law as the Oregon Supreme Court would apply it. *See S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001). If no decision by the Oregon Supreme Court is available to guide the Court's interpretation of state law, the Court must predict how the Oregon Supreme Court would decide the issue by using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. *Id.*

## DISCUSSION

The partial cross motions for summary judgment in this case require the Court to determine a purely legal question: whether Oregon's OFP scheme preempts the City's labor peace requirement in its Sustainable Procurement Policy. For the reasons below, the Court concludes that the ordinance is not preempted either expressly or impliedly. Accordingly, Plaintiff's Partial Motion for Summary Judgment is denied, Defendant's Partial Cross Motion for Summary Judgment is granted, and Plaintiff's first claim for relief, count two, is dismissed with prejudice.

## I.    Oregon Preemption Standard

Federal courts apply state law to determine issues of state preemption. *See First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1279 (9th Cir. 2017). Under the Oregon Constitution, a city's authority to adopt ordinances is governed by constitutional provisions that provide a "home-rule" for cities and towns that adopt charters. *Gunderson, LLC v. City of Portland*, 352 Or. 648, 659 (2012). Article XI, section 2, of the Oregon Constitution provides that

> [t]he Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city

and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon.

Or. Const. Art. XI, sec. 2.  As the Oregon Supreme Court has repeatedly explained, "[l]aws adopted pursuant to that home-rule authority cannot conflict with state legislation."  *Owen v. City of Portland*, 368 Or. 661, 667 (2021); *Gunderson*, 352 Or. at 659 ("Home-rule municipalities possess authority to enact substantive policies, even in areas also regulated by state law, so long as the local enactment is not incompatible with state law.").  In this case, it is undisputed that the City has home-rule authority to enact local laws.  *See* Pl.'s Mot. Partial Summ. J. 9; Def.'s Resp. Pl.'s Mot. Partial Summ. J. & Memo. in Support Cross-Mot. Partial Summ. J. ("Def.'s Resp. & Cross-Mot.") 9, ECF 22.

Importantly, a city's home-rule authority creates a presumption against preemption: "To protect the constitutional interests of municipalities in exercising their home-rule authority, the state must be particularly clear when preempting local legislative authority, and [Oregon courts] interpret local enactments to function consistently with state law if possible."  *Owen*, 368 Or. at 667-68; *Rogue Valley Sewer Servs v. City of Phoenix*, 357 Or. 437, 453 (2015) (explaining that courts must "begin with the assumption that the legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent").  State law conflicts with, and may preempt, local law either expressly or by implication.  *See City of Portland v. Bartlett*, 304 Or. App. 580, 593 (2020).  A state law expressly preempts a local law if "the legislature meant its law to be exclusive," and a state law impliedly preempts a local law when "both cannot operate concurrently."  *Owen*, 368 Or. at 667.

A plaintiff challenging the validity of a city ordinance carries the "heavy burden of showing that state law preempts the city's ordinance."  *Id.* at 668 (citing *Rogue Valley Sewer Servs*, 357 Or. at 454 ("A party that challenges a home-rule city's authority as preempted by state

law is required to show that the legislature 'unambiguously' expressed its intent—a high bar to overcome.")).  Further, when an ordinance is promulgated under a city's constitutional home-rule authority, "the state statute's preemption of the ordinance must be unambiguous; if there is ambiguity, the ordinance is not preempted." *Owen*, 368 Or. at 668.

To determine whether a local ordinance is preempted by state law, the Court "must follow the state's rules of statutory interpretation." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) (internal quotations and citation omitted).  As with other cases involving statutory interpretation, Oregon courts employ the methodology set forth in *PGE v. Bureau of Labor & Industries*, 317 Or. 606 (1993), and *State v. Gaines*, 346 Or. 160 (2009).  The Court must "start by reviewing the text of the statute, in context, and considering any relevant legislative history.  The 'paramount goal' of that process is 'discerning the legislature's intent.'" *Zweizig v. Rote*, 368 Or. 79, 83, 486 P.3d 763, 766 (2021) (citing *Gaines*, 346 Or. at 171-72).  A court is responsible "for correctly construing a statute, regardless of the parties' proffered interpretations." *Zweizig*, 368 Or. at 84 (2021) (citing *Stull v. Hoke*, 326 Or. 72 (1997)).  This same method is employed for interpreting administrative rules.  *Kroetch v. Emp. Dep't*, 289 Or. App. 291, 299 (2017).

## II.    Express Preemption

The parties present two contrasting interpretations whether (1) the state's OFC scheme was intended to be exclusive, and (2) whether the labor peace requirement is expressly preempted by that state scheme.  On the one hand, DePaul argues that it is apparent from ORS chapter 279 that the Oregon legislature intended to create a uniform and exclusive state scheme under the OFP.  Pl.'s Mot. Partial Summ. J. 11-16.  In DePaul's view, the legislature's delegation of authority to DAS to administer the OFP demonstrates that the legislature intended for the OFP

scheme to be exclusive. *See id.* (citing *Brown v. Spokane, P. & S. Ry. Co.*, 248 Or. 110 (1967)).

DePaul further argues that because the OFP is exclusive, and because DAS has exclusive

authority to administer the OFP, the labor peace agreement is preempted because DAS did not

expressly provide for a "labor peace requirement" in its list of "employee working conditions" in

OAR 125-055-0040(8)(a)-(e).  Pl.'s Mot. Partial Summ. J. 16-20.

On the other hand, the City argues that the state legislature did not unambiguously

express its intention for the OFP to operate exclusively from certain local laws.  Def.'s Resp. &

Cross-Mot. 7-13.  The City emphasizes that the OFP statutory scheme expressly contemplates

and permits public entities to follow its own local labor laws, so the OFP cannot be considered

exclusive.  *Id.*  Further, the City contends that the labor peace requirement is a "dispute

resolution procedure" that governs employee labor conditions—or, at minimum, that there is

some ambiguity as to whether the labor peace agreement would qualify as such.  *Id.* at 9-12.

    A.    *State Statutory and Regulatory Text and Context*

As the Oregon Supreme Court has often repeated, "the text of the statutory provision

itself is the starting point for interpretation and is the best evidence of the legislature's intent."

*PGE*, 317 Or. at 610.  ORS chapter 279 provides for provisions involving public contracting,

which includes the OFP.  The express purpose of the OFP is to

> [f]urther the policy of this state to encourage and assist individuals with
> disabilities to achieve maximum personal independence within their communities
> through productive gainful employment by assuring an expanded and constant
> market for products and services produced by qualified nonprofit agencies for
> individuals with disabilities, thereby enhancing their dignity and capacity for self-
> support.

ORS 279.840.  This purpose is achieved through ORS 279.850(1)(a), which provides that

> except as provided in paragraph (b) of this subsection and subject to paragraph (c)
> of this subsection, a public agency that intends to procure a product or service on
> the procurement list that the Oregon Department of Administrative Services

established under ORS 279.845 . . . shall, in accordance with the department's
rules, procure the product or service at the price the department establishes from a
qualified nonprofit agency for individuals with disabilities, provided that the
product or service is of the appropriate specifications and is available within the
period the public agency requires.

The introductory clause of that statute, "except as expressly provided in paragraph (b),"

expressly recognizes limits to the general procedure set forth in ORS 279.850(1)(a).  Under

subsection (1)(b), a public agency is not required to obtain a product or service through a

qualified nonprofit agency via the OFP if:

[a]ll of the qualified nonprofit agencies for individuals with disabilities on the
procurement list that applies to the public agency have a record in the previous
three years of repeatedly violating, *or are not now in compliance with, applicable
local ordinances or resolutions that govern labor standards*. . . .

ORS 279.850(1)(b)(A) (emphasis added).  Further, ORS 279.850(2) discusses what a public

agency may require in an agreement with a qualified nonprofit agency:

[a] public agency may require in any agreement with a qualified nonprofit agency
for individuals with disabilities under ORS 279.835 . . . to 279.855 . . . *that the
qualified nonprofit agency for individuals with disabilities comply with applicable
local ordinances or resolutions that govern labor standards.*

ORS 279.850(2)(a) (emphasis added).

DAS has defined the term "local ordinances or resolutions that govern labor standards."

For the purpose of ORS 279.850, local ordinances or resolutions that govern labor standards

means "ordinances or resolutions, duly adopted by a local government body . . . that regulate

employee working conditions."  OAR 125-055-0040(8).  DAS further defines employee working

conditions as consisting of

(a)     Wage rates or salaries;
(b)     Hours of labor, work days, leave, and workplace safety conditions;
(c)     Health insurance or health care benefits;
(d)     Retirement or pension benefits; and
(e)     *Dispute resolution procedures.*

OAR 125-055-0040(8)(e) (emphasis added).

To implement the OFP, the legislature vested DAS with specific duties, which requires

DAS to

(a)     Determine the price of all products manufactured and services offered for
        sale to the various public agencies by any qualified nonprofit agency for
        individuals with disabilities. The price shall recover the cost of raw
        materials, labor, overhead, delivery costs and a margin held in reserve
        for inventory and equipment replacement;
(b)     To revise such prices from time to time in accordance with changing cost
        factors;
(c)     To make such rules regarding specifications, time of delivery and other
        relevant matters of procedure as shall be necessary to carry out the
        purposes of [the OFP]; and
(d)     To promote the requirements under ORS 279.835 . . . to 279.855 . . . .

ORS 279.845(1)(a)-(d).  DAS is also tasked with the duty to "establish and publish a list of

sources or potential sources of products produced by any qualified nonprofit agency for

individuals with disabilities and the services provided by any such agency that the department

determines are suitable for procurement by public agencies . . ."  ORS 279.845(2).  The

legislature provided that DAS "may not delegate any duty imposed under this section to any

person or public agency outside of the department."  ORS 279.845(3).

B.      *The Oregon legislature did not unambiguously express an intent to preclude local*
        *governments from requiring a labor peace agreement.*

The Court agrees with the City that the relevant statutory scheme does not

unambiguously indicate the legislature's intent to make the OFP exclusive.  Rather, the OFP

expressly contemplates and allows for local jurisdictions to enforce laws that govern the labor

standards in their contracts with qualified nonprofit agencies under the OFP.  The statute does so

in two ways: it both (1) allows for exceptions as to when a public agency must contract with an

OFP contractor, and (2) permits a local agency to enter into such contracts so long as it is

consistent with relevant local laws.  *See* ORS 297.850(1)(b), (2).  This express allowance for local jurisdictions to apply their own labor laws when entering into contracts under the OFP cuts strongly against DePaul's argument of express preemption.  *See AT & T Commc'ns v. City of Eugene*, 177 Or. App. 379, 397 (2001) (noting that related statutes referencing local regulatory action and concurrent regulatory powers by municipalities "suggest that the legislature intended not exclusive state regulation . . . , but rather concurrent state and local government regulation").

The Court also rejects DePaul's argument that the legislature's delegation of exclusive authority to DAS for the OFP demonstrates the legislature's intent to make the OFP exclusive. DePaul correctly recognizes that the legislature delegated to DAS the authority to carry out duties related to the OFP and that DAS may not delegate that authority to another public entity. ORS 279.845.  Nevertheless, DePaul's sole focus on DAS's authority ignores the broader statutory scheme of the OFP: the text of the OFP also permits public entities to decline to contract with OFCs who do not comply with certain local labor laws.  *See* ORS 279.850(1)(b), (2).  In so doing, the legislature intended for DAS to oversee the OFP in conjunction with the express exceptions for public agencies enforcing local labor laws.[2]  Thus, DAS's inability to delegate its duties under the OFP does not evidence legislative intent that the entire program is exclusive.

_____

[2] In this respect, *Brown*, 248 Or. 110, is distinguishable.  There, the Oregon Supreme Court considered whether a railroad was negligent in failing to comply with a local ordinance regarding warning devices.  *Id.* at 122-25.  The Court concluded that the local ordinance was preempted by an Oregon state statute that granted the Public Utility Commissioner "alone" the authority to "determine what grade crossings in the state are dangerous and the type of warning device to be used to warn the traveler."  *Id.* at 125.  Because those "determinations are left *exclusively* to the state, there [was] no room left in which the cities may act on this matter."  *Id.* (emphasis added). Here, although DAS may not delegate any of its duties related to the OFP, it does not "alone" have the authority to promulgate local labor standards that exist concurrently with the OFP, so it does not operate exclusively in this regard.

Moreover, the legislature, in giving DAS broad and non-delegable authority to establish rules related to the OFP program, *see* ORS 279.845, has expressed its intent for DAS to define the scope of permissible local laws governing labor standards. Specifically, DAS could, through its rulemaking, delineate whether a labor peace agreement is a permissible local regulation governing labor standards. The fact that DAS maintains this authority—and could ultimately resolve any conflicts concerning the interpretation of its rules—lends supports to the conclusion that the legislature intended for concurrent regulation in this area.

Accordingly, based on the statutory text and relevant context,[3] DePaul has failed to meet its heavy burden of demonstrating that the legislature intended to make the OFP exclusive.

C.    *It is ambiguous whether the labor peace requirement governs employee working conditions as a dispute resolution procedure.*

Even if this Court were to accept DePaul's argument that the OFP statutory scheme is exclusive, DePaul could not prevail on the second prong of its argument, which is that DAS's rules unambiguously disallow labor peace agreements.[4] *See Owen*, 368 Or. at 668 ("[I]f there is ambiguity, the ordinance is not preempted.").

---

[3] The Court does not find the OFP statutory scheme's legislative history useful in resolving the preemption issue set forth in the cross motions for partial summary judgment. *See Gaines*, 346 Or. at 172 ("[T]he court will consult [legislative history] after examining text and context . . . where that legislative history appears useful to the court's analysis.").

[4] As an aside, the Court is not convinced that a local ordinance can be preempted by agency rulemaking. Whether a local ordinance is preempted is based on an analysis of *legislative* action and *legislative* intent and generally looks to statutes, not administrative rules. *See Rogue Valley Sewer Servs.*, 357 Or. at 450-51.

At oral argument, DePaul pointed to *Brown*, 248 Or. 110, as an example of a preemption issue that is determined by agency rulemaking. But in *Brown*, the local ordinance would have been preempted regardless of any specific action taken by the Public Utilities Commissioner, whereas here DePaul takes the position that whether the ordinance is preempted is ultimately dependent on whether DAS's rules allow for labor peace agreements. (cont…)

A public agency may decline to contract with an OFC under the OFP if the QFC is "not

now in compliance with[] applicable local ordinances or resolutions that govern labor standards."

ORS 279.850(1)(B)(a).  A local ordinance or resolution that governs labor standards "regulate[s]

employee working conditions," and specifically includes "[d]ispute resolution procedures."

OAR 125-055-0040(8), (e).  Importantly, the term "dispute resolution procedures," as used in

OAR 125-055-0040(8)(e), is not defined by DAS.  The fact that DAS has not defined the term

supports the City's position that there is at least some ambiguity as to its meaning.

The City urges the Court to use dictionary definitions to determine the meaning of the

term "dispute resolution procedures."  Absent a statutory definition, courts "ordinarily look to

the plain meaning of the statute's text to determine what particular terms mean."  *State v.*

*Dickerson*, 356 Or. 822, 829 (2015).  "When 'a term is a legal one, [Oregon courts] look to its

"established legal meaning" as revealed by, for starters at least, legal dictionaries.'"  *DCBS v.*

*Muliro*, 359 Or. 736 (2016) (quoting *Comcast Corp. v. Dept. of Rev.*, 356 Or. 282, 296 (2014)).

When afforded its legal meaning, the term "dispute resolution" is considered synonymous with

the term "alternative dispute resolution," which means "[a]ny procedure for settling a dispute by

---

DePaul also asserts that state laws can be preempted by federal regulations and argues by extension that, in Oregon, local ordinances and regulations can be preempted by state administrative rules. Pl.'s Combined Reply Mot. Partial Summ. J. & Resp. Cross-Mot. Partial Summ. J. ("Pl.'s Reply") 10, ECF 25 (citing *Martin v. Comcast*, 209 Or. App. 82, 91 (2006) (quoting *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985))). This extension is perhaps appropriate. State agencies can promulgate administrative rules, which "have the regulatory force and effect of law." *Oregon Firearms Educ. Found. v. Bd. of Higher Educ.*, 245 Or. App. 713, 722 (2011). But state agencies, while arms of the state, are not the Legislative Assembly. *Id.* And given the principles of home-rule authority in Oregon, it is not clear that the Oregon Supreme Court would extend its preemption doctrine to agency rulemaking.

It is therefore unclear whether preemption under Oregon law can, as DePaul argues, turn on agency rulemaking as opposed to legislative action. This Court need not resolve this issue, however, given its conclusion that DAS's rules do not unambiguously prohibit labor peace agreements.

means other than litigation . . . ." *See Dispute Resolution, Alternative Dispute Resolution*,

Black's Law Dictionary (11th ed. 2019). As Black's Law Dictionary further explains, this term

is defined as "encompassing *all legally permitted processes* of dispute resolution other than

litigation," including negotiation. *Id.* (emphasis added). Thus, even considering dictionary

definitions, the term dispute resolution procedures is broad enough to potentially encompass

alternative means of preventing labor disputes, such as a labor peace agreement.

DePaul further argues that the rule specifically allows for "*employee* . . . dispute

resolution procedures," OAR 125-055-0040(8)(e) (emphasis added), and a labor peace

agreement is not a procedure concerning an agreement between the employer and employee.

Pl.'s Reply 6-7. While this argument has logical force, it falls short of demonstrating that OAR

125-055-0040(8)(e) *unambiguously* prohibits labor peace agreements. The rule broadly allows

for ordinances or regulations that govern "employee working conditions," which could plausibly

include actions such as "picketing, work stoppages, boycotting, [or] strikes[.]" Joint Status

Report Ex. A at 1. DePaul further argues that this Court should apply general maxims of

statutory construction, including *expression unius est exclusion alteris* ("*expression unius*") and

*noscitur a sociis*, to determine that the rule does not encompass labor peace agreements. Pl.'s

Mot. Partial Summ. J. 17-18. But resorting to general maxims of statutory construction is only

appropriate if the intent is unclear after examining the text, context, and legislative history.

*Gaines*, 346 Or. at 172. Given that it is DePaul's burden to demonstrate that the rule is

unambiguous, it is unnecessary to resort to maxims of statutory construction in this case.

In sum, there is at least some ambiguity as to whether a labor peace agreement qualifies

as a dispute resolution procedure under OAR 125-055-0040(8)(e). This ambiguity is enough to

demonstrate that DePaul has not meet its heavy burden to demonstrate that DAS's rules implementing the OFP expressly preempt the labor peace requirement.[5]

## III.  Implied Preemption

Although the OFP does not expressly preempt the labor peace requirement, the Court must also consider whether the OFP impliedly preempts the labor peace requirement.  A state law impliedly preempts a local law "to the extent it cannot operate concurrently with the state law, *i.e.*, the operation of local law makes it impossible to comply with the state statute." *Thunderbird Mobile Club, LLC v. City of Wilsonville*, 234 Or. App. 457, 474 (2010), *rev. den.*, 348 Or. 524 (2010).

DePaul argues that, if DAS has exclusive authority under the OFP statutory scheme, then the OFP and labor peace requirement cannot operate concurrently given the state's need for uniformity and the labor peace requirement's creation of barriers for OFCs.  Pl.'s Mot. Partial Summ. J. 20-21.  DePaul highlights that DAS prohibits public agencies from "develop[ing] specifications that inhibit or tend to discourage Public Contracting with OFC providers for the acquisition of Oregon Forward-produced products and services."  OAR 125-055-0010(1)(a).  It also argues that the labor peace requirement is too far-reaching, because the requirement "essentially has delegated authority to unions the ability impose whatever conditions they like on OFCs, in exchange for the unions' agreement not to picket or stop work, even though the City could not itself impose such conditions."  Pl.'s Mot. Partial Summ. J. 21.

---

[5] This Court does not express any opinion as to whether the City was actually permitted to enact a labor peace requirement under OAR 125-055-0040(8)(e).  As the City argues, "a rule violation does not preemption make."  Def.'s Resp. & Cross-Mot. 15.  If that is correct, then nothing in this Opinion should foreclose DePaul from challenging the alleged rule violations under an alternative theory, if one exists.

The City responds that the OFP does not preempt the labor peace requirement, because (1) DAS does not have exclusive authority over interactions between OFP contractors and labor organizations, and (2) the OFP contemplates allowing public agencies having and enforcing local labor laws, so any such laws—such as the labor peace requirement—are not contrary to the OFP in that the two can operate concurrently.  Def.'s Resp. & Cross-Mot. 13-14.

The Court concludes that, incorporated with the extensive discussion above, the OFP statutory scheme can operate concurrently with the labor peace requirement.  To begin with, DePaul acknowledges that it could comply with the requirement by entering into what it terms a "lopsided, overreaching, and unconscionable labor peace agreement."  Declaration of Katy Daughn ("Daughn Decl.") ¶ 3, ECF 19.  Broadly speaking, it was therefore not *impossible* for the City's labor peace requirement to operate concurrently with the OFP, even if doing so was completely unworkable for DePaul.

To be sure, there is an inherent tension between the requirements of the OFP and the City's labor peace requirement.  For instance, DePaul asserts that given the absence of any limitations on what could be required in a labor peace agreement, this requirement is inconsistent with DAS's non-delegable duty to establish the requirements for the OFP program.  Pl.'s Mot. Partial Summ. J. 21 (citing ORS 279.845).  DePaul further argues that the City is prohibited from "develop[ing] specifications that inhibit or tend to discourage Public Contracting with OFC providers," yet it imposes inhibiting and discouraging conditions through its labor peace requirement.  *Id.* (citing OAR 125-055-0010(1)(a)).

Despite these tensions, this Court cannot conclude that it is impossible for the labor peace requirement to operate concurrently with the OFP.  As discussed above, it is not clear whether the labor peace requirement falls within the OFP's permitted scope of a public entitles' authority

to regulate dispute resolution procedures under local law.  Because the OFP expressly permitted local agencies to apply local laws governing dispute resolution procedures, it is not certain whether the City's labor peace requirement "inhibit[s] or tend[s] to discourage" public contracting with OFC contractors in a way that is not concurrent with the OFP.  Given the absence of a clear and unambiguous conflict between the OFP and the labor peace requirement, this Court cannot conclude that the labor peace requirement is impliedly preempted.

In sum, DePaul has not met its heavy burden of demonstrating that the state OFP statutory scheme either expressly or impliedly preempts the City's labor peace requirement as a matter of law.  As a result, the City is entitled to a judgment as a matter of law in its favor and Count Two is dismissed with prejudice.[6]

## CONCLUSION

Plaintiff's Partial Motion for Summary Judgment, ECF 17, is DENIED, and Defendant's Partial Cross Motion for Summary Judgment, ECF 21, is GRANTED.  Plaintiff's first claim for relief, count two, is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 25th day of August, 2022.

ANDREW HALLMAN
United States Magistrate Judge

---

[6] Given that the Court concludes that the labor peace requirement is not impliedly preempted by the OFP, the Court does not consider the City's assertion that DePaul should have initiated a challenge under the Public Contracting Code, ORS 279A.025.  As noted above, whether DePaul had—or still has—alternative grounds to assert that the labor peace requirement is inconsistent with or violates the statutes and rules governing the OFP is beyond the scope of this Court's opinion.