ANNE MILLIGAN, OSB #111615
Deputy City Attorney
anne.milligan@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503 823-3089

SCOTT A. KRONLAND (*pro hac vice*)
skronland@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Defendant City of Portland*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DEPAUL INDUSTRIES, INC., | Case No. 3:21-cv-01792-HL |
| Plaintiff, | |
| v. | **DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| CITY OF PORTLAND, | |
| Defendant. | Fed. R. Civ. P. 12(b)(6) |

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

L.R. 7-1 CERTIFICATION ............................................................................................. 1

MOTION ......................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

    I.      INTRODUCTION ............................................................................. 1

    II.     BACKGROUND .............................................................................. 1

          A.     DePaul's original complaint .................................................. 1

          B.     The City's amended labor peace requirement ....................... 2

          C.     DePaul's First Amended Complaint ...................................... 4

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT ................................................................................................................... 5

    I.      The NLRA does not preempt the City's procurement requirement ...................... 5

          A.     The City's requirement is permissible market participation ...................... 5

          B.     City councilmembers' purported motivations are not relevant to NLRA preemption analysis. ...................................................... 8

          C.     The City's procurement requirement does not authorize the Mayor to participate in labor negotiations. ................................................ 9

    II.     The City's procurement requirement does not violate the Oregon Forward statutes. ...................................................................... 10

          A.     The City may set the requirements for City contracts. ............................ 10

          B.     The City's requirement governs labor standards. ..................................... 12

    III.    The City's procurement requirement does not violate the Equal Protection Clause. ................................................................ 14

    IV.    The City's procurement requirement does not violate Oregon's Privileges and Immunities Clause. .......................................................... 17

CONCLUSION .............................................................................................................. 19

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Airline Service Providers Ass'n v. Los Angeles World Airports*,
  873 F.3d 1074 (9th Cir. 2017) ................................................................. 5, 6, 7, 8, 9

*Animal Legal Def. Fund v. Wasden*,
  878 F.3d 1184 (9th Cir. 2018) ...................................................................... 17

*Armour v. City of Indianapolis*,
  566 U.S. 673 (2012) ............................................................................ 14, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 4

*Bldg. & Constr. Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc.*,
  507 U.S. 218 (1993) ................................................................................. 5

*Chamber of Com. of U.S. v. Brown*,
  554 U.S. 60 (2008) .................................................................................. 5

*F.C.C. v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) ............................................................................ 14, 17

*Golden State Transit Corp. v. City of Los Angeles*,
  475 U.S. 608 (1968) ................................................................................. 7

*Heller v. Doe*,
  509 U.S. 312 (1993) ................................................................................ 14

*Hotel Emps. & Rest. Emps. Union, Loc. 57 v. Sage Hosp. Res., LLC*,
  390 F.3d 206 (3d Cir. 2004) ........................................................................ 8

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
  803 F.3d 389 (9th Cir. 2015) ...................................................................... 16

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
  623 F.3d 1011 (9th Cir. 2010) ............................................................. 6, 7, 8, 9, 15

*Lehnhausen v. Lake Shore Auto Parts Co.*,
  410 U.S. 356 (1973) ................................................................................ 14

*Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee County*,
  431 F.3d 277 (7th Cir. 2005) ........................................................................ 8

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ...................................................................... 5

*N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*,
  431 F.3d 1004 (7th Cir. 2005) ...................................................................... 9

*Ry. Express Agency v. New York*,
  336 U.S. 106 (1949) ................................................................................ 16

*U.S. R.R. Ret. Bd. v. Fritz*,
  449 U.S. 166 (1980) ................................................................................ 17

*Williamson v. Lee Optical of Okla., Inc.*,
  348 U.S. 483 (1955) ................................................................................ 16

*Wisconsin Department of Industrial, Labor & Human Relations v. Gould Inc.*,
  475 U.S. 282 (1986) ................................................................................. 8

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

**State Cases**

*Advanced Drainage Sys., Inc. v. City of Portland*,
  166 P.3d 580 (Or. Ct. App. 2007) ........................................ 18
*Atl. Richfield Co. v. Greene*,
  784 P.2d 442 (Or. Ct. App. 1989) ........................................ 19
*Blachana, LLC v. Bureau of Lab. & Indus.*,
  318 P.3d 735 (Or. 2014) ........................................ 13
*City of Klamath Falls v. Winters*,
  619 P.2d 217 (Or. 1980) ........................................ 17
*In re Marriage of Crocker*,
  22 P.3d 759 (Or. 2001) ........................................ 18
*Plummer v. Donald M. Drake Co.*,
  320 P.2d 245 (Or. 1958) ........................................ 18
*S. Wasco Cnty. Ambulance Serv., Inc. v. State*,
  968 P.2d 848 (Or. Ct. App. 1998) ........................................ 19
*Seto v. Tri-County Metro. Transp. Dist. of Or.*,
  814 P.2d 1060 (Or. 1991) ........................................ 18
*Sherwood Sch. Dist. 88J v. Wash. Cnty. Educ. Serv. Dist.*,
  6 P.3d 518 (Or. Ct. App. 2000) ........................................ 18, 19
*State v. Goacher*,
  466 P.3d 1047 (Or. Ct. App. 2020) ........................................ 17
*State v. Robinson*,
  343 P.2d 886 (Or. 1959) ........................................ 18

**Federal Statutes**

29 U.S.C. § 151 ........................................ 5
42 U.S.C. § 1983 ........................................ 4

**State Statutes**

Oregon Constitution, art. I, § 20 ........................................ 4, 17
ORS 279.835(6) ........................................ 2
ORS 279.845 ........................................ 12, 13
ORS 279.850 ........................................ 13
ORS 279.850(1)(a) ........................................ 11
ORS 279.850(1)(b)(A) ........................................ 12

**State Regulations**

OAR 125-055-0010(1) ........................................ 11
OAR 125-055-0010(1)(a) ........................................ 11
OAR 125-055-0040(8)(e) ........................................ 12

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

On November 22, 2022, counsel for Defendant City of Portland ("the City") conferred in good faith with counsel for Plaintiff DePaul Industries, Inc. ("DePaul") about the subject of this motion. The issue could not be resolved without the assistance of the Court.

## MOTION

The City moves the Court to dismiss DePaul's First Amended Complaint ("FAC"), and each cause of action therein, for failure to state a viable claim for relief. In support of this motion, the City relies upon Fed. R. Civ. P. 12(b)(6), the points and authorities below, the files and record of this case, and such other matters as the Court may properly consider in ruling on the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Portland City Council ("City Council") adopted a labor peace agreement requirement for City contracts for security, janitorial, and industrial laundry services. Pursuant to that procurement requirement, the City will not award a contract unless (1) the contractor has an agreement with a labor organization that requires the labor organization to refrain from any economic interference with the contractor's performance of the contracted services, or (2) one of the specified exceptions is satisfied.[1] DePaul challenges the legality of the City's procurement requirement. As will be demonstrated below, DePaul's claims should be dismissed.

### II. BACKGROUND

#### A. DePaul's original complaint

In 2003, the City Council adopted a Sustainable Procurement Policy, codified as ADM-1.09. FAC ¶ 8. The procurement policy provides guidelines for City purchases of goods and services. In 2020, the City Council amended the procurement policy to provide that the City will

---

[1] The City's current labor peace agreement requirement is attached as Attachment A.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

award janitorial, security, and industrial laundry service contracts only to contractors that meet a labor peace agreement requirement. FAC ¶ 9.

DePaul is a company that, among other things, provides unarmed security services. FAC ¶ 1. DePaul qualifies for the State's Oregon Forward program, which requires public agencies to give priority to contractors that have a specified percentage of their work performed by people experiencing disabilities. FAC ¶ 1; *see* ORS 279.835(6). In December 2021, the City notified DePaul that DePaul would not be eligible to receive a City contract DePaul had sought because DePaul refused to comply with the City's then-applicable labor peace agreement requirement. FAC ¶ 19.[2]

DePaul filed this lawsuit on December 10, 2021, alleging that the labor peace requirement was preempted by federal and state law and violated the federal and state constitutions. FAC ¶ 10; ECF 1, at ¶¶ 18–47. The parties agreed that the City would waive the application of the labor peace agreement requirement to DePaul pending the resolution of the lawsuit. FAC ¶ 20. DePaul then moved for summary judgment on its claim that the State's Oregon Forward statutes preempted the labor peace requirement; the City filed a cross-motion for summary judgment on that claim. *See* ECF 17, 21. This Court granted summary judgment for the City, finding that the Oregon Forward statutes do not expressly or impliedly preempt the City's procurement requirement. ECF 30.

### B.    The City's amended labor peace requirement

In July 2022, while DePaul's lawsuit was pending, the City Council amended the City's labor peace agreement requirement by adopting Resolution 37583. FAC ¶ 11; Res. 37583 (July 20, 2022).[3] Under the amended requirement, the City will not award a contract for janitorial, security, or industrial laundry services unless the contractor provides proof that the contractor has an agreement with a labor organization that represents employees providing similar services

---

[2] DePaul alleges that, under this labor peace agreement requirement, its sister company struggled to obtain a labor peace agreement because a labor organization made "lopsided, overreaching and unconscionable" demands and sought illegal provisions. FAC ¶¶ 17–18.

[3] Resolution 37583 is attached as Attachment B.

Page 2  -  DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
              FIRST AMENDED COMPLAINT

pursuant to which agreement the labor organization "agrees to refrain from engaging in any picketing, work stoppages, boycotting, strikes, or any other economic interference with the contractor's or subcontractor's performance of services." Att. A, at 1.

The City's amended requirement expressly "applies only to the performance of services to carry out the contract with the City" and only for "the duration of the service contract." *Id.* The requirement also expressly states that it does not "require[] a contractor or subcontractor to recognize a particular labor organization or to enter into a collective bargaining agreement establishing the substantive terms and conditions of employment" and is not "intended to enact or express any generally applicable policy regarding labor/management relations, or to regulate those relations in any way, or to provide a preference for any outcome in the determination of employee preference regarding union representation." *Id.*

The amended labor peace agreement requirement also provides that the City may waive the requirement if the Mayor's Office or its delegee determines that a contractor meets any of three exceptions. *Id.* at 1–2. The exceptions are: (1) when no labor organization indicates that it intends to organize the contractor's employees on City contracts and the contractor certifies it has no reason to expect a labor dispute; (2) when applicable labor organizations indicate they do not wish to negotiate labor peace and the contractor provides a plan for continuation of services in the event of a disruption; and (3) when the contractor makes good faith efforts to obtain a labor peace agreement, including by offering to submit to mediation and binding interest arbitration before a neutral dispute resolution organization, but is unable to obtain an agreement, and the contractor provides a plan for continuation of services in the event of disruption. *Id.*

The amended labor peace requirement declares that the "City has proprietary interests in avoiding picketing, work stoppages, boycotting, strikes, and other economic interference with the performance of contracted janitorial, security, and industrial laundry services because these services are essential to keep the City's other functions operational." *Id.* at 1. In its Resolution adopting the amended requirement, the City Council found that "City bureaus and offices depend

Page 3  - DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
            FIRST AMENDED COMPLAINT

on continuous, uninterrupted, and reliable services to enable them to adequately serve the residents of Portland" and that "labor-management conflict would jeopardize the City's proprietary interests as a purchaser of services by substantially interfering with the quality and consistency of services provided to the City and its residents." Att. B, at 1. The City Council also found that the labor peace requirement was necessary "to specifically address the high-risk industries of janitorial, security, and industrial laundry." *Id.*

### C. DePaul's First Amended Complaint

On October 14, 2022, DePaul filed a First Amended Complaint challenging the City's amended labor peace agreement requirement. ECF 33. Because the City's original requirement was never applied to DePaul, *see supra* at 2, that requirement is no longer at issue.

DePaul's first claim for relief seeks a declaratory judgment that the labor peace agreement requirement is invalid for three reasons. First, DePaul alleges that the requirement is preempted by the National Labor Relations Act ("NLRA"). FAC ¶¶ 23–27. Second, DePaul contends that the requirement violates Oregon law by placing an "impermissible condition on Oregon Forward contractors." FAC at 6 & ¶¶ 28–40. Third, DePaul contends that the requirement violates the Privileges and Immunities Clause of the Oregon Constitution, art. I, § 20, because the requirement "privilege[s] labor unions over other private organizations." FAC ¶¶ 41–46. DePaul's second claim for relief is brought under 42 U.S.C. § 1983 and contends that the labor peace requirement violates the Federal Constitution's Equal Protection Clause because the requirement treats contractors providing janitorial, security, and industrial laundry services differently from contractors providing other services. FAC ¶¶ 47–53.

### LEGAL STANDARD

A Rule 12(b)(6) motion will be granted if the factual allegations in a complaint, taken as true, do not state a viable claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the Court may consider the complaint's allegations as well as "materials

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

incorporated into the complaint by reference[] and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

**ARGUMENT**

## I. THE NLRA DOES NOT PREEMPT THE CITY'S PROCUREMENT REQUIREMENT.

DePaul claims that the NLRA, 29 U.S.C. § 151 *et seq.*, preempts the City's labor peace agreement requirement. FAC ¶ 26. DePaul is wrong because the City is acting in its capacity as a market participant in placing conditions on the award of City contracts, and the procurement requirement is narrowly tied to reducing the risk of disruption to City services. The Ninth Circuit upheld essentially the same labor peace requirement against an NLRA preemption challenge in *Airline Service Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1079–80 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 2740 (2019).

### A. The City's requirement is permissible market participation.

The NLRA regulates labor-management relations for most private-sector employees and employers. While the NLRA "contains no express pre-emption provision," the Supreme Court has interpreted the NLRA to preempt state or local regulation of "activity that the NLRA protects, prohibits, or arguably protects or prohibits" and of "conduct that Congress intended [to] be unregulated because left to be controlled by the free play of economic forces." *Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 65 (2008) (internal quotation marks omitted). But NLRA "pre-emption doctrines apply only to state *regulation*." *Bldg. & Constr. Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 227 (1993) (emphasis in original). "When a state or local government buys services or manages property as a private party would, it acts as a 'market participant,' not as a regulator," and "the NLRA does not preempt state or local government actions taken as a market participant." *Airline Serv. Providers*, 873 F.3d at 1079, 1085.

"To decide whether a . . . local government is acting as a market participant or instead as a regulator" the Court must ask two questions. *Id.* at 1080.

Page 5  - DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

> First, is the challenged governmental action undertaken in pursuit of the efficient procurement of needed goods and services, as one might expect of a private business in the same situation? Second, does the narrow scope of the challenged action defeat an inference that its primary goal was to encourage a general policy rather than to address a specific proprietary problem?

*Id.* (citations and internal quotation marks omitted, alteration adopted). "If the answer to *either* question is 'yes,' the governmental entity is acting as a market participant." *Id.* (emphasis added). As in *Airline Service Providers*, in which the Ninth Circuit held that a challenge to a labor peace agreement requirement was properly dismissed on the pleadings, here the answer to both questions is "yes."

*First*, the City's action is "undertaken in pursuit of the efficient procurement of needed . . . services." *Airline Serv. Providers*, 873 F.3d at 1080 (internal quotation marks omitted). "[T]he City is attempting to avoid disruption of its business." *Id.* As the City's requirement itself states: "The City has proprietary interests in avoiding picketing, work stoppages, boycotting, strikes, and other economic interference with the performance of contracted janitorial, security, and industrial laundry services because these services are essential to keep the City's other functions operational." Att. A, at 1; *see also* Att. B, at 1 ("[L]abor-management conflict would jeopardize the City's proprietary interests as a purchaser of services by substantially interfering with the quality and consistency of services provided to the City and its residents."). The requirement also serves the City's "proprietary interest in saving money." *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1025 (9th Cir. 2010) (internal quotation marks omitted and alteration adopted). The City Council found that "service disruption would result in additional costs and otherwise avoidable expenditures of limited taxpayer funds." Att. B, at 1.

Indeed, the City's labor peace requirement here is a more direct example of market participation than the similar requirement upheld in *Airline Service Providers*. In that case, Los Angeles imposed a labor peace requirement as part of its licensing agreements with third-party contractors providing services to airlines operating out of a municipal airport. *See Airline Serv.*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

*Providers*, 873 F.3d at 1077. The labor peace requirement thus was at least one step removed from how Los Angeles "participate[d] directly in a market for goods and services." *Id.* at 1081. Here the labor peace requirement is part of the City's direct participation in the market: The City itself purchases security, janitorial, and industrial laundry services for the City's own purposes, and the City expects its contractors to provide those services to the City without interruption. As such, the City's action falls even more squarely "within the market participant exception to preemption" because it is part of how the City "directly participates in the market by purchasing goods or services." *Johnson*, 623 F.3d at 1023.[4]

*Second*, and by itself dispositive, the City's labor peace requirement is "narrowly tied to a specific proprietary problem," *i.e.*, "avoiding labor disruptions" that could interfere with the delivery of certain City services. *Airline Serv. Providers*, 873 F.3d at 1082, 1083 (internal quotation marks omitted). Like the labor peace requirement in *Airline Service Providers*, the City's labor peace requirement "does not govern all of the City's contractual relationships." *Id.* at 1082. Instead, it applies to a limited range of service contracts the City determined to be "high-risk" and particularly "essential." Att. B, at 1; Att. A, at 1. The requirement "is limited to addressing the needs" of the City as a purchaser of these services. *Airline Serv. Providers*, 873 F.3d at 1083. And as a requirement in procurement contracts, it "serves [that] cabined purpose." *Id.* at 1084.

Like the requirement in *Airline Service Providers*, the City's amended labor peace requirement also is carefully tailored to satisfy the City's proprietary interests without affecting a contractor's operations more generally. The requirement expressly "applies only to the performance of services to carry out the contract with the City," and ends "at the termination of

---

[4] By contrast, the policy at issue in *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608 (1968), was impermissible regulation, not market participation, because Los Angeles allegedly withheld a business license from a taxi company involved in a labor dispute even though Los Angeles did not "use the taxi company for any city functions or services." *Airline Serv. Providers*, 873 F.3d at 1081 (discussing *Golden State*). Here, the City *does* "use the [contractors] for . . . city . . . services," and the labor peace requirement is solely a condition on the award of such contracts and solely applies to the services covered by the contracts.

Page 7 - DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

the contract between the City and the contractor." Att. A, at 1. The requirement also expressly provides that the contractor need not "recognize a particular labor organization or . . . enter into a collective bargaining agreement establishing the substantive terms and conditions of employment." *Id.*

The City's amended labor peace agreement requirement also is drafted to avoid the potential overbreadth issue raised by DePaul—that a labor organization might demand overbroad, unreasonable, or illegal terms in a labor peace agreement. *See* FAC ¶¶ 17–18. If a labor organization were to make such demands, the contractor can offer to submit the dispute to "binding interest arbitration before a neutral dispute resolution organization"; if the labor organization will not agree, the contractor is excused from providing a labor peace agreement. Att. A, at 2. The labor peace requirement in *Airline Service Providers* made similar use of binding interest arbitration to resolve disputes. *See* 873 F.3d at 1077.

As such, "[n]othing in the text of [the labor peace requirement] or in the Complaint's allegations suggests that [the labor peace requirement] will be enforced" beyond contracts for these specific services "or that [the labor peace requirement] will hamper service providers' operations elsewhere." *Id.* at 1082; *see also Hotel Emps. & Rest. Emps. Union, Loc. 57 v. Sage Hosp. Res., LLC*, 390 F.3d 206, 217–18 (3d Cir. 2004) (upholding municipality's "specifically tailored" labor neutrality requirement for a public financed development project).[5]

### B. City councilmembers' purported motivations are not relevant to NLRA preemption analysis.

DePaul alleges that city councilmembers enacted the labor peace agreement requirement to benefit a particular union, rather than for the proprietary reasons stated in Resolution 37583 and

---

[5] By contrast, the NLRA preempted the county ordinance in *Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee County*, 431 F.3d 277 (7th Cir. 2005), because the ordinance imposed requirements that applied regardless of whether employees worked on county contracts. *Id.* at 279. Likewise, the NLRA preempted the statute in *Wisconsin Department of Industrial, Labor & Human Relations v. Gould Inc.*, 475 U.S. 282 (1986), because the state government was seeking to control "private parties' conduct unrelated to the performance of contractual obligations to the state." *See Johnson*, 623 F.3d at 1026 (discussing *Gould*).

Page 8 - DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

the requirement itself. *See* FAC ¶¶ 12–13. But legislative action that is not otherwise preempted by the NLRA does not become preempted because of individual legislators' (alleged) political motivations for voting for that action.

"Congress did not intend for the NLRA's . . . preemptive scope to turn on state [or local] officials' subjective reasons for adopting a regulation or agreement." *Johnson*, 623 F.3d at 1026; *see also N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004, 1007 (7th Cir. 2005) ("*Lavin*") ("Federal preemption doctrine evaluates what legislation *does*, not why legislators voted for it or what political coalition led to its enactment.") (emphasis in original). In *Airline Service Providers*, the Ninth Circuit quoted with approval the Seventh Circuit's observation "that lurking political motives are an inevitable part of a public body's actions and are not 'a reason for invalidity.'" 873 F.3d at 1084 (quoting *Lavin*, 431 F.3d at 1007). The Ninth Circuit upheld the airport labor peace requirement even though "at least one organization of service employees advocated for inclusion of [the labor peace requirement] when the City was revising its standard . . . licensing contract." *Id.* at 1077. As such, the alleged motivations of city councilmembers are irrelevant.

## C. The City's procurement requirement does not authorize the Mayor to participate in labor negotiations.

DePaul also contends that the NLRA preempts the City's procurement requirement because the requirement makes the Mayor's Office "the ultimate arbiter of whether a contractor must agree to the terms a union proposes," FAC at 1. But that is not a fair reading of the requirement itself—and DePaul's speculation about how the requirement might be applied is not a reason for concluding that the requirement is preempted on its face.

What the requirement actually provides is that "[t]he Mayor's Office or elected's delegee shall be responsible for determining whether a selected contractor meets an exception to this policy." Att. A, at 2. The three exceptions are for situations in which (1) no labor organization responds to a contractor's notice that it seeks a labor peace agreement, (2) the labor organization

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

is not interested in negotiating a labor peace agreement, or (3) the contractor cannot obtain a labor peace agreement notwithstanding that the contractor made "good faith efforts" which "must include an offer by the contractor to submit its dispute" to "mediation before a neutral mediator" and "binding interest arbitration before a neutral dispute resolution organization." Att. A, at 1–2. In this context, the reference to "good faith efforts" means that the contractor tried to negotiate with the labor organization and, if unsuccessful, offered mediation and interest arbitration. It does not mean that the Mayor would be participating in negotiations or judging the reasonableness of the contractor's proposals.

In any event, DePaul does not allege that it invoked one of the exceptions and that the Mayor's office denied DePaul's request, much less that DePaul's requested exemption was denied for impermissible reasons. DePaul therefore lacks standing to bring any "as applied" challenge to the enforcement of the procurement requirement.

For all these reasons, DePaul's NLRA preemption claim should be dismissed.

## II. THE CITY'S PROCUREMENT REQUIREMENT DOES NOT VIOLATE THE OREGON FORWARD STATUTES.

This Court already dismissed with prejudice DePaul's claim that the Oregon Forward statutes expressly or impliedly preempt the City's labor peace agreement requirement. ECF 33. DePaul now attempts to repackage its preemption argument as a claim that the City's requirement places an "impermissible condition on Oregon Forward contractors" because the requirement is not a "local ordinance or resolution that governs labor standards." FAC at 6 & ¶¶ 37–38. This argument fails for two independent reasons. First, the requirement imposes a specification for City contracts that applies to all prospective contractors, so it is permissible whether or not it governs "labor standards." Second, the labor peace requirement *does* govern "labor standards."

### A. The City may set the requirements for City contracts.

Oregon law generally requires public agencies, when they are procuring certain goods and services, to procure those goods and services from Oregon Forward contractors.

Page 10 - DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

ORS 279.850(1)(a). But Oregon law only imposes that requirement "provided that the product or service is of the appropriate specifications." *Id.* Nothing in the Oregon Forward statutes precludes a public agency from specifying that service contractors must protect the agency from service disruptions, whether by meeting bonding, insurance, and indemnity requirements or by meeting a labor peace agreement requirement.

The City's standard purchase orders include requirements that contractors maintain specified levels of insurance and agree to indemnify the City for any liability arising from the contractor's actions. *See* City of Portland, Standard Purchase Order Terms & Conditions (Goods and Services), §§ 4, 15 (updated March 2020), https://www.portlandoregon.gov/brfs/article/156171. Multnomah County seeks similar terms in county contracts. *See* Multnomah County, Contract Insurance & Indemnification Manual, https://www.multco.us/finance/risk-management/contract-insurance-indemnification-manual. The labor peace agreement requirement serves the same purpose.

Oregon Department of Administrative Services ("DAS") regulations governing the Oregon Forward program recognize that a public agency must procure a service from an Oregon Forward contractor only if the service is "of specifications appropriate to the Agency's procurement needs." OAR 125-055-0010(1). The City's requirement that contractors in specific industries secure a labor peace agreement is a "specification appropriate to the [City's] procurement needs." As the requirement itself explains, the City needs to "avoid[] picketing, work stoppages, boycotting, strikes, and other economic interference with the performance of contracted janitorial, security, and industrial laundry services because these services are essential to keep the City's other functions operational." Att. A, at 1.

The only substantive limit the DAS regulations place on public agencies' discretion in adopting specifications for the award of contracts is that specifications may not be "develop[ed]" to "inhibit or tend to discourage Public Contracting with [Oregon Forward] providers for the acquisition of Oregon Forward-produced products or services." OAR 125-055-010(1)(a). DePaul

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

does not allege that the labor peace agreement requirement was developed to inhibit or discourage contracting with Oregon Forward contractors. The City imposes the same requirement on *all* contractors providing the covered services. Att. A, at 1. There is no logical reason why Oregon Forward contractors would be less able than other contractors to meet the City's requirement. Indeed, DePaul alleges that it "faces the prospect of . . . being passed over in favor of an Oregon Forward contractor that agrees to comply with the Amended Labor Peace Requirement." FAC ¶ 38. DePaul's own desire to contract with the City without meeting the City's requirement does not establish that the City's requirement is unlawful.

### B. The City's requirement governs labor standards.

The Oregon Forward statutes, in addition to recognizing that public agencies can (and must) adopt specifications for the award of contracts, also expressly provide that public agencies need not contract with Oregon Forward contractors that do not comply with "applicable local ordinances or resolutions that govern labor standards." ORS 279.850(1)(b)(A). The City's labor peace agreement requirement is lawful for this reason as well.

DAS is responsible for adopting rules to carry out the purposes of the Oregon Forward Program. *See* ORS 279.845. DAS regulations interpret the Oregon Forward statutes to mean that local ordinances or resolutions can "regulate employee working conditions," including "[d]ispute resolution procedures." OAR 125-055-0040(8)(e). As this Court previously held, resolutions "regulat[ing] employee dispute resolution procedures," OAR 125-055-0040(8)(e), is a broad enough category to include a requirement that contractors obtain labor peace agreements that require disputes about union representation to be resolved without any economic disruption. *See* ECF 30, at 14.

DePaul appears to contend that the DAS regulation defining "labor standards" is not a permissible interpretation of the Oregon Forward statutes. *See* FAC at 9 n.4 ("Although DAS has defined that phrase through rulemaking, Plaintiff's claim is rooted in the statutory text and not the DAS rule."). But this Court already has rejected that argument. The Court held that "the legislature,

Page 12  - DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
            FIRST AMENDED COMPLAINT

in giving DAS broad . . . authority to establish rules related to the [Oregon Forward] program, *see* ORS 279.845, has expressed its intent for DAS to define the scope of permissible local laws governing labor standards. Specifically, DAS could, through its rulemaking, delineate whether a labor peace agreement is a permissible local regulation governing labor standards." ECF 30, at 12.

The legislative history also supports interpreting the term "labor standards" in the Oregon Forward statutes as broad enough to include a labor peace agreement requirement. The legislature amended ORS 279.850 in 2015 to expressly permit local governments to enforce local resolutions governing labor standards against Oregon Forward contractors. *See* 2015 Or. Laws Ch. 526, § 3. Seven years earlier, Portland's City Council had added a section to its Sustainable Procurement Policy governing "Labor Standards" for apparel manufacturers. *See* City of Portland, Sustainable Procurement Policy, Attachment 1, § 1, https://www.portland.gov/sites/default/files/2022/adm-1.09-full-text.pdf; City of Portland, Resolution 36641, Sweatshop Free Procurement Policy and Code of Conduct Resolution (Oct. 15, 2008), https://efiles.portlandoregon.gov/Record/3454198/File/Document. The Sustainable Procurement Policy's "Labor Standards" section included a requirement that contractors "remain strictly neutral on the matter of workers' choice to unionize or not unionize." *Id.*, § 1(a). The legislature would have been aware of the "labor standards" imposed by the largest city in Oregon when amending the Oregon Forward statutes. *See Blachana, LLC v. Bureau of Lab. & Indus.*, 318 P.3d 735, 744 (Or. 2014) ("We presume that the legislature was aware of existing law."). Accordingly, the legislature would have understood that the term "labor standards" is used by local governments to refer to standards applicable to disputes about unionization.

For all these reasons, DePaul's claim that the City's procurement requirement violates the Oregon Forward statutes should be dismissed.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

## III. THE CITY'S PROCUREMENT REQUIREMENT DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE.

DePaul claims that it has been deprived of equal protection of the laws because the City Council applied the labor peace requirement only to City contracts for janitorial, security, and industrial laundry services and not to other types of City contracts. FAC ¶¶ 48–50. This claim fails because the City Council could have had rational reasons for applying the requirement only to certain types of contracts.

"In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Moreover, the "actual[] motivat[ions]" of the legislative body are "irrelevant," and "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* at 315. "Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 365 (1973)). Additionally, because non-suspect classifications are "presumed constitutional, the 'burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'" *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

The City Council could have had numerous rational reasons to prioritize labor peace for janitorial, security, and industrial laundry services contracts. The existence of even one rational basis for the distinction between types of contracts is sufficient to foreclose DePaul's equal protection challenge.

First, the City Council rationally could have determined that the covered contracts are more susceptible to labor disruptions than other contracts. The City Council Resolution adopting the current policy states that the labor peace agreement requirement is necessary "to specifically

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

address the[se] high-risk industries." Att. B, at 1. A draft media statement attached to DePaul's First Amended Complaint states that "workers in these industries are more vulnerable to poverty wages, wage theft, sexual assault in the work place, increased risk of safety and health hazards, retaliation for asserting their rights on the job, and other work-related problems." FAC Ex. 3, at 2. The City Council could have concluded that these vulnerabilities make workers in these industries especially ripe for union organizing. As such, these industries would be especially vulnerable to labor disruptions like those specifically identified in the policy: "picketing, work stoppages, boycotting, strikes, and other economic interference." *See* Att. A, at 1. Indeed, DePaul alleges that another company performing these types of services had difficulty negotiating with a union. FAC ¶¶ 17–18. The City Council, anticipating such difficulties in these industries in the future, could reasonably have decided to minimize the likelihood of labor unrest that would disrupt City services. *See Johnson*, 623 F.3d at 1031 ("[T]he District could have rationally believed that the [challenged policy] would promote its legitimate interest in avoiding labor disruptions.").

Second, the City Council rationally could have concluded that avoiding disruption of the covered services is especially important. The policy states that "these services are essential to keep the City's other functions operational." Att. A, at 1; *see also* Att. B, at 1 ("City bureaus and offices depend on continuous, uninterrupted, and reliable services to enable them to adequately serve the residents of Portland."). The City Council rationally could have decided that the possible added costs of requiring labor peace agreements are justified to minimize the likelihood of interruptions to these especially important services. As the resolution adopting the challenged policy explained: "Businesses may be required to take additional steps in securing a labor peace agreement, but in return will have an ability to guarantee that work stoppages will not occur for the duration of the contract." Att. B, at 2; *see also id.* at 1 ("[S]ervice disruption would result in additional costs and otherwise avoidable expenditures of limited taxpayer funds."). While the disruption of some other types of contracted services could also interfere with City operations, "the Constitution does not require the City to draw the perfect line nor even to draw a line superior to some other line it might

Page 15  - DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

have drawn. It requires only that the line actually drawn be a rational line." *Armour*, 566 U.S. at 685.

Third, the City Council rationally could have decided that, in these industries, the City would not have difficulty attracting contractors that are willing to comply with the labor peace requirement. Janitorial, security, and industrial laundry services are commodity services offered by many contractors, not specialized services for which there may be little competition. The City Council may have concluded that, even if one contractor does not wish to comply with the labor peace requirement, there will be other contractors that are willing to comply and can provide the same services without any decrease in quality and with less risk of interruption. DePaul itself alleges that it risks "being passed over in favor of an Oregon Forward contractor that agrees to comply with the Amended Labor Peace Requirement." FAC ¶ 38. "It is legitimate and rational" for a city to set economic policy "based on economic factors," including "the ability of employers" to comply with that policy. *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 407 (9th Cir. 2015).

Fourth, the City Council rationally could have decided to proceed on a step-by-step basis and apply its labor peace requirement to these common service contracts before considering whether to expand the application of the requirement to other less common types of contracts. The City Council might rationally have decided that these common contracts are an appropriate place to test the requirement of labor peace agreements to avoid disruptions in contracted services. "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Ry. Express Agency v. New York*, 336 U.S. 106, 110 (1949). Rather, "the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955).

DePaul alleges that the City Council adopted the labor peace policy to benefit a particular union or unions generally, rather than, as the policy itself states, to serve the City's interest in

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

avoiding service disruptions. *Compare* FAC ¶ 12, *with* Att. A, at 1.[6] But when there are rationally conceivable bases for a legislative classification, the equal protection "inquiry is at an end." *See Beach Commc'ns*, 508 U.S. at 314. The legislative body's purported actual motivations for legislative action are irrelevant under the rational basis test. *Id.* at 315. Indeed, so long as there is any plausible legitimate purpose for an economic classification, even purported legislative animus does not violate the Equal Protection Clause. *See Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200–01 (9th Cir. 2018).

For all these reasons, DePaul's equal protection claim should be dismissed.

## IV. THE CITY'S PROCUREMENT REQUIREMENT DOES NOT VIOLATE OREGON'S PRIVILEGES AND IMMUNITIES CLAUSE.

Finally, DePaul claims that the City's procurement requirement violates the Oregon Constitution's Privileges and Immunities Clause, art. I, § 20, because the City has "privilege[d] labor unions over other private organizations." FAC ¶¶ 42–44. This claim fails for essentially the same reasons that DePaul's federal equal protection claim fails: The City Council rationally could conclude that labor disputes are more likely to disrupt the performance of City service contracts than disputes with other private organizations.

"[I]n the usual case substantially the same analysis is applicable in determining whether there has been a denial of equal protection of the laws or a grant of a privilege or immunity on terms not equally applicable to all citizens." *City of Klamath Falls v. Winters*, 619 P.2d 217, 227 (Or. 1980). When no suspect class is involved, the plaintiff must show that "the differential treatment has no rational basis." *State v. Goacher*, 466 P.3d 1047, 1050 (Or. Ct. App. 2020). In

---

[6] DePaul's allegations regarding legislative motivations are based on a comment from one member of one city councilmember's staff, *see* FAC ¶ 12, that may not even reflect the views of that councilmember. The amended labor peace agreement requirement passed unanimously, *see* FAC Ex. 3, at 2, and individual legislators may have multiple reasons for supporting legislation. *See U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 181 (1980) (Stevens, J., concurring). Nothing in the amended requirement itself or the Resolution adopting the amended requirement expresses an intent to benefit or harm particular groups rather than to avoid interruptions to "essential" City services. Att. A, at 1.

Page 17  - DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

assessing whether there is a rational basis for differential treatment, courts must ask, as for federal equal protection claims, what a "legislator rationally could believe." *In re Marriage of Crocker*, 22 P.3d 759, 766 (Or. 2001). The question is "whether there is *any* rational basis for the distinction drawn by the legislature, whether or not it was a basis that the legislature even considered." *Sherwood Sch. Dist. 88J v. Wash. Cnty. Educ. Serv. Dist.*, 6 P.3d 518, 528 (Or. Ct. App. 2000) (emphasis in original). "Fundamentally, classification is a matter committed to the discretion of the legislature and the courts will not interfere with the legislative judgment unless it is palpably arbitrary." *Plummer v. Donald M. Drake Co.*, 320 P.2d 245, 248 (Or. 1958).

DePaul's claim fails here because it is rational for the City Council to require service contractors to seek labor peace agreements with labor organizations and not with other private organizations that are less likely to cause disruptions.[7] The City's requirement specifies that a contractor must seek a labor peace agreement with "a labor organization that represents employees providing similar services in the states of Oregon or Washington *and* that represents or seeks to represent any group of the contractor's or subcontractor's employees who are or will be involved in providing such services to carry out a contract with the City." Att. A, at 1 (emphasis added). The City Council rationally could conclude that these labor organizations are the most likely organizations to cause a dispute that would disrupt performance of the contract, and that the City has a legitimate interest in avoiding disruption of these services.

Labor organizations are certainly the organizations most likely to engage in "picketing, work stoppages, boycotting, strikes, and other economic interference with the performance of contracted . . . services." Att. A, at 1. DePaul does not allege any facts to show that "other private organizations" are equally likely to bring about such disruptions. Moreover, under the Privileges

---

[7] DePaul's privileges and immunities claim also fails because DePaul, which is not a member of the group of allegedly mistreated "other private organizations," FAC ¶ 43, cannot bring a claim concerning such organizations. *See Seto v. Tri-County Metro. Transp. Dist. of Or.*, 814 P.2d 1060, 1066 (Or. 1991); *State v. Robinson*, 343 P.2d 886, 889 (Or. 1959). Corporations like DePaul also may not be citizens protected by Oregon's Privileges and Immunities Clause. *See Advanced Drainage Sys., Inc. v. City of Portland*, 166 P.3d 580, 583 (Or. Ct. App. 2007).

Page 18  - DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

and Immunities Clause, "[t]he legislature is not required to address problems all at once and may legislate on a piecemeal basis, addressing problems in the order that it sees fit." *Atl. Richfield Co. v. Greene*, 784 P.2d 442, 444 (Or. Ct. App. 1989).

Because the City Council had a rational basis for requiring contractors to seek labor peace agreements with labor organizations and not with other organizations less likely to cause disruptions, DePaul's allegation that the City Council wanted to provide unions "in roads," FAC ¶ 12, is irrelevant. Courts "do not attempt to psychoanalyze the motives of legislators to determine whether the passage of a given bill actually was motivated by interest group politics." *Sherwood Sch. Dist.*, 6 P.3d at 528. The question is just whether the distinction between labor organizations that have organized workers in a particular industry and other private organizations has "any rational basis at all." *See S. Wasco Cnty. Ambulance Serv., Inc. v. State*, 968 P.2d 848, 853 (Or. Ct. App. 1998). It does.

For all these reasons, DePaul's privileges and immunities claim should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the City's motion to dismiss should be granted.

DATED: November 23, 2022       Respectfully submitted,

*/s/ Anne Milligan*
ANNE MILLIGAN, OSB #111615
Deputy City Attorney
anne.milligan@portlandoregon.gov

SCOTT A. KRONLAND
Altshuler Berzon LLP

*Attorneys for Defendant City of Portland*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089